## DOLLARHIDE V. PARKS *et al.*, *Appellants.*

1. **Sheriff's Sale:** AMENDED DEED.' A sheriff's deed, although it may be insufficient to pass title because of erroneous recitals as to the date of the judgment and sale, may be corrected by an amended deed containing the proper recitals.

2. ———: AMENDED DEED, LOSS OF. The subsequent loss and destruction of the amended deed will not destroy its effect.

3. **Evidence:** ACCOUNTING FOR LOST DEED. Where such amended deed was filed for record, but not recorded, the evidence showing that the recorder, after indorsing it filed for record, stated he had not time to record it then, and it was thereupon offered in evidence on the trial of a pending cause and left with the judge, and afterwards, while in the latter's possession, was lost or destroyed; *held*, that the failure to offer the record of the deed in evidence was sufficiently accounted for.

4. **Collector's Bond:** ACTION FOR COUNTY REVENUES: PARTY. The county is the real party in interest and the proper and necessary one to recover lost revenue funds belonging to it and sued for on a default in the collector's bond.

5. ———: ———: ———. The state in such case is a nominal party and the county does not sue in a representative capacity, but in its own right.

6. **Judgment:** PETITION: COLLATERAL PROCEEDING. Where a petition is amendable, even though it fails to state a cause of action, a judgment thereon is not a nullity, nor can its validity or rights of purchasers thereunder be assailed in a collateral proceeding.

7. **Sheriff's Sale:** IRREGULARITY: COLLATERAL PROCEEDING. The sale of land of a defendant not attached, before the sale of attached land of his co-defendants, if an irregularity, is one to which the court's attention should be seasonably called and will not be assailed in a collateral proceeding.

8. **Sheriff's Sale, Ratification of.** Where, after the land of the sureties, against whom a judgment had been obtained on a collector's bond, had been sold under execution, they appeared before the county court and effected a compromise of the judgment, claiming and receiving a credit for the amounts realized on the sale of their land, they will be held to have ratified the sale.

*Appeal from Hickory Circuit Court.*—Hon. W. O. Meade, Special Judge.

Reversed.

*Amos S. Smith* for appellants.

(1) The court erred in overruling defendants' demurrer to the evidence offered and admitted on part of the plaintiff. (2) The court erred in sustaining the objections of the plaintiff thereto and holding that the first deed offered in evidence by the defendants was void upon its face. Freeman on Ex. 329; *Strain v. Murphy,* 49 Mo. 337; *Buchannan v. Tracy,* 45 Mo. 437; *Wack v. Stevenson et al.,* 54 Mo. 481; *Matney v. Graham,* 50 Mo. 559; *Wilhite v. Wilhite,* 53 Mo. 71; *Davis v. Kline,* 76 Mo. 310; *Moore v. Wingate,* 53 Mo. 398; Rorer on Judicial Sales [3 Ed.] p. 399, sec. 1066. (3) The court erred in sustaining the objection of the plaintiff thereto and excluding from evidence the amended deed to Amos S. Smith, dated May 17, 1881. Freeman on Ex. 332; *Thornton v. White,* 48 Mo. 219; *Bush v. White,* 85 Mo. 339. (4) The court erred in overruling the objections of the defendants thereto and admitting in evidence the petition in the cause of the state of Missouri at the relation and to the use of Hickory county against John D. Pitts *et al. Eans v. Bank,* 79 Mo. 182; *State ex rel. v. Sullivan County,* 51 Mo. 522; *Chouteau v. Gibson,* 76 Mo. 38, 49; *Garth v. Caldwell,* 72 Mo. 622; *Bank v. Franklin County,* 65 Mo. 105; Rorer on Judicial Sales [2 Ed.] p. 32, secs. 61, 62, 64, note 1; *Corpenny v. Sedalia,* 57 Mo. 88; *Sweet v. Maupin,* 65 Mo. 65; Bigelow on Estop. [3 Ed.] 183, 193, and 29; 1 Greenl. Evid. [13 Ed.] p. 572, sec. 530. (5) The court erred in overruling the objections of the defendants thereto and admitting in evidence the writs of attachment in case of the state of Missouri at the relation and to the use of Hickory

county against John D. Pitts *et al. Lenox v. Clark*, 52 Mo. 115; *Asbury v. O'Dell*, 83 Mo. 264; *Holton v. Towner*, 81 Mo. 360; *Sloan v. Mitchell*, 84 Mo. 546. (6) The court erred in overruling the objections of the defendants and admitting in evidence the affidavit of Wilson, prosecuting attorney, made in the case of the state of Missouri at the relation and to the use of Hickory county against John D. Pitts *et al.;* also in granting the first and second declarations of law asked by the plaintiff. (7) The court erred in overruling the objections of the defendants thereto and granting the third declaration of law asked by the plaintiff. *Ervin v. Brady*, 48 Mo. 560; *Judge v. Booge*, 47 Mo. 545; *Houck v. Cross*, 67 Mo. 151; Freeman on Executions, secs. 2, 38, 46, 107, 252, 253, 259; *Davis v. Kline*, 76 Mo. 310; *Foulk v. Colburn*, 48 Mo. 225; *Cobell v. Grubbs*, 48 Mo. 353; *State to use v. Cave*, 49 Mo. 129; *Maupin v. Emmons*, 47 Mo. 304; Rorer on Judicial Sales [2 Ed.] secs. 675, 789–90, 792–93, 1059, 21, 61, and note 1, and secs. 62 and 64; *Yeoman v. Younger*, 83 Mo. 424. (8) The court erred in sustaining the objections of the plaintiff thereto and refusing the declarations of law numbered one, two, three, six, eight and nine, asked by the defendants. (9) The court erred in sustaining the objections of plaintiff thereto and in refusing the tenth declaration of law asked by defendants. Rorer on Judicial Sales [2 Ed.] secs. 169, 456–57–58, and 467–68–69; Bigelow on Estop. [3 Ed.] 579; *McConnell v. People*, 71 Ill. 481; *Austin v. Loring*, 63 Mo. 19. (10) The court erred in sustaining the objection of the plaintiff thereto and refusing the thirteenth declaration of law asked by the defendants. Rorer on Judic. Sales [2 Ed.] p. 76, sec. 171. (11) The court erred in the declaration of law given of its own motion. It is not applicable to the case or the evidence in the case. (12) The court erred in finding the issues for the plaintiff and in overruling motions for new trial and in arrest of judgment.

*Ross & Rechow* for respondent.

(1) The first deed offered in evidence by defendants, purporting to convey plaintiff's title, is void upon its face. *Tanner v. Stone,* 18 Mo. 580; *Wilhite v. Wilhite,* 53 Mo. 71. It was so treated by defendant Smith, for he procured an amended deed by order of court. But the amended deed was not offered in evidence, as it was claimed to be lost, nor was any record of the same produced in evidence. The evidence shows that it was filed for record, and the law presumes it was recorded. The record would be the best evidence of its contents. (2) The second amended deed was properly excluded by the court, for the reason that if the sheriff had executed a proper deed his power was exhausted. *Ware v. Johnson,* 66 Mo. 662. (3) The petition in the case was fatally defective, and stated no cause of action. The plaintiff's right to sue is a necessary allegation, and the petition nowhere alleges that Hickory county authorized the bringing of the suit by the state, nor are there any allegations from which such right can be inferred. That no judgment can be rendered on a petition fatally defective, see *State to use v. Matson,* 38 Mo. 487; *Headlee, Adm'r, v. Cloud,* 51 Mo. 301; *State to use v. Bartlett,* 68 Mo. 583; *Weil v. Greene Co.,* 69 Mo. 286, 287, and authorities there cited; *State to use v. Patton,* 42 Mo. 533. If a petition is radically defective it is the same as though the court had rendered judgment without any. It will not be pretended that a judgment rendered without a petition, even though the parties appeared, would be valid. (4) The judgment is special, and directs that execution issue first, to sell the property condemned, and, if that be not sufficient, then a general execution to issue. If it be contended that the court could render the judgment it did, then the execution under which plaintiff's lands were sold was issued in

violation of the judgment, and is void. The execution was special and general, and commanded the sheriff to sell the condemned property first, and if that be not sufficient, then only had he a right to sell other property. Yet, it appears from the return, that the plaintiff's lands were sold on the sixteenth, and the condemned lands not until the seventeenth of the month, in direct violation of the command of the writ, and the attorney of the defendants in that suit becomes the purchaser of thousands of acres at a nominal sum. There is no pretense that the Parks are purchasers for value. A purchaser is bound to look to the judgment and execution, and, in this case, the purchaser being the attorney, must, as a matter of fact, have known all these defects. That an officer can only sell in obedience to the command of the writ, see *State to use v. Cave*, 49 Mo. 127.

RAY, J.—This is an action of ejectment for the recovery of the described premises, the petition being in the usual form. The defendant, Marion Parks, was the original defendant in the cause, against whom the suit was instituted, and the other defendants, Theophilus Parks and Amos S. Smith, were, upon their own motion, made parties defendant.

The answer of the defendants was as follows:

"And now come the defendants in this cause, and for answer to plaintiff's petition filed in said cause, deny each and every allegation contained in said petition. And, further answering, say, that on the sixteenth day of May, 1877, the lands in question were sold by W. D. Harryman, sheriff of Hickory county, Missouri, under an execution in a cause wherein the state of Missouri, at the relation and to the use of Hickory county, was plaintiff, and John D. Pitts, Wm. A. Pitts, Y. M. Pitts, D. B. Pitts, A. J. Pitts, M. W. Dorman, William Dollarhide, John W. Quigg, Joseph Crates, and John Jackson, were defendants, as the lands of William

Dollarhide, to Amos S. Smith; that, at the time of said sale of said lands, Wm. Dollarhide was the owner thereof; that a deed was executed to Amos S. Smith by said W. D. Harryman, as such sheriff, conveying the interest of said William Dollarhide of, in, and to, said lands; that said William Dollarhide was present at said sale, and afterward said William Dollarhide received a credit therefor upon the judgment named in the above-mentioned cause; that said lands were afterward sold by said Amos S. Smith to Theophilus Parks, and afterward said Theophilus Parks sold said lands to Marion Parks, defendant in this cause. And having fully answered said defendants pray to be discharged with costs."

The plaintiff filed a replication, which is as follows: "Now comes plaintiff, and for reply to defendant's answer, admits that the sheriff, W. D. Harryman, made a deed to the lands in the petition mentioned to Amos S. Smith, and pretended to convey the interest of William Dollarhide thereto. Plaintiff alleges that said deed is void, and did not convey the legal, or any equitable, title to said premises. Deny each and every other allegation in said answer."

In 1874, one John D. Pitts was elected to the office of collector of the state and county revenue for the county of Hickory, in this state, and this plaintiff, with others, it seems, went upon his bond as such collector. Upon the settlement of the accounts of said collector with the county court of said county, a large sum was found due and owing the different revenue funds of the county, unaccounted for by the collector, and in a suit upon the bond by the county, judgment was recovered in the sum of over thirty-six hundred dollars. Under said judgment, the land in question, then belonging to plaintiff Dollarhide, was, with a large lot of other lands belonging to the obligors in said bond, sold at sheriff's sale, and said Smith became the purchaser, and received

the sheriff's deed therefor, dated May 26, 1877, men-
tioned in the pleadings aforesaid. Afterwards, said
Smith conveyed to said Theophilus Parks, and said
Theophilus to said Marion Parks, said last two deeds
being deeds of warranty, and formal in all respects.

The said sheriff's deed to Smith, when offered in
evidence at the trial, was successfully objected to, by
plaintiff, upon the ground that it was void upon its face,
for the reason that it recited a judgment rendered on the
fifteenth day of November, 1877, and a sale on the six-
teenth day of December, 1877, when there was no court
in session.   In order to have been correct, said recitals
in the deed should have been that said judgment was
rendered on November 15, 1876, and that said sale
was made on the sixteenth day of May, 1877; in other
words, the misrecital as to the judgment is in the year,
the year 1877 being given, whereas the correct year was
1876, and the misrecital as to the sale is in the month,
December being used instead of May.   The deed further
recites that execution, dated the eighteenth of December,
1876, was issued on said judgment, directed to said
sheriff, and delivered to him, by virtue of which, on the
first day of January, 1877, he made the levy, and that,
on the sixteenth day of December (May), 1877, "and
during the session of the circuit court, at the May term
thereof, A. D., 1877," the right, title, and interest of said
Wm. Dollarhide was exposed to sale.   The deed bears
date May 18, 1877, and was acknowledged in open court
on the twenty-sixth day of May, 1877.   With the excep-
tion of the misrecitals aforesaid, the deed was other-
wise formal and correct, as is conceded.

We deem it unnecessary to discuss, or consider at
length, the several and opposing views of counsel, as to
whether said misrecitals were such as made the deed
void on its face, or are to be regarded as clerical mis-
takes, for the reason that the amended deed of said Har-
ryman, duly executed, acknowledged, and delivered to

the said Smith for the said lands, was entirely free from these infirmities, which were corrected in the amended deed made for that purpose, and that its subsequent loss or destruction did not lose or destroy its force and effect.

Defendant Smith testified without objection that, in November, 1879, upon the trial of a certain suit in ejectment, wherein one George Smith was plaintiff, and said Wm. Dollarhide was defendant, and involving some of the lands embraced in said sheriff's deed, the latter, when offered in evidence, was objected to, upon the ground that it recited that the sale was made on the six-teenth day of December, 1877, instead of the sixteenth day of May, 1877, and that, thereupon, he had the sheriff, who executed the same, brought in, who then produced his sale-book, which contained the entries of sales made to said Smith, by him, and referred to in said deed, which sale-book showed the sale was made on said May 16, 1877; that he had made particular inquiries for said sale-book, and learned that it was lost, having been informed that it was destroyed when the court-house was burned; that, at the trial, at said November term, 1879, at his request, the court directed the sheriff to make him an amended deed; and that said sheriff and witness took said sale-book and said execution, in the original suit of the *State to use of Hickory County v. Pitts et al.*, upon the collector's bond, and the deed offered in evidence, and filled up a similar printed form; and that an amended deed, with the same recitals, was then made out, correcting said misrecitals, as to the dates of the judgment and sale, which the sheriff signed and acknowledged in open court, and which, after the endorsement of acknowledgment by the clerk, was deliv-ered to him; that he then offered the amended deed in evidence, in said cause of said *Smith v. Dollarhide*, then pending before Fyan, the judge of said court, who left without deciding the case, taking said deed with him. He further testified that Judge Fyan informed him that

the deed was destroyed or lost in the cyclone at Marsh-field, Missouri, in April, 1880.

The evidence of the sheriff was to the effect that, at said November term, 1879, he made such amended deed, for the purpose of correcting the misrecitals in the former deed ; that the amended deed recited that the judgment was rendered in 1876, and that the sale was made in May instead of December ; that he and Smith compared the amended deed with the original, and the sale-book and execution, Smith reading the amended deed, whilst he read the former deed, execution, and sale-book ; that he acknowledged the deed in open court and delivered it.

In this behalf, defendant also offered in evidence the records of the circuit court of date of November 14, 1879, in said action upon the collector's bond, and containing the entry of acknowledgment, of said sheriff, of a deed by him to said Smith, and conveying the same lands embraced in the original deed offered in evidence, including the land involved in this action.

This evidence, and there is no evidence to the contrary in the record, clearly shows the execution, the loss, or destruction, and contents, of said amended deed. The objection urged in this behalf is, that the evidence of the witness, Smith, shows that it was filed for record ; that the law presumes it was recorded, and that the record, therefore, was the best evidence of its contents. But the evidence of Smith, we think, fully and satisfactorily answers the objection in this behalf. He testified as follows : " Harryman took that deed, and, in my company, went into the courthouse, and after having before signed it, acknowledged it in open court. The clerk endorsed the acknowledgment upon the deed, and afterward handed it to me ; I had it filed for record ; M. N. Neihardt, the recorder, said he had not time to record it at that time ; the filing was endorsed by him upon the deed; I then offered that deed in evidence in

the cause of *Geo. A. Smith v. Wm. Dollarhide*, then pending in court; Judge Fyan left without deciding the case; he took the deed with him; I have used every possible effort to find the deed; it is lost; I am informed that it was lost or destroyed in the cyclone at Marshfield, Missouri, in April, 1880."

The plaintiff, in rebuttal, offered and read in evidence the petition in said suit on the bond of the collector, for the purpose of showing that the same was fatally defective for want of sufficient statement of facts to constitute a cause of action, and that for this reason no judgment could be rendered therein in said cause. The plaintiff contends in this behalf that the right of the plaintiff in that suit to sue on said bond was a necessary and indispensable allegation, and that the petition therein nowhere alleged that Hickory county authorized the bringing of the suit by the state, nor showed the facts from which such right and authority could be inferred.

The cause is entitled in the petition : " The state of Missouri to the use and in relation of Hickory county, plaintiff, against John D. Pitts, * * * Wm. Dollarhide [and others who are named], defendants." It charges that in November, 1874, the defendants, by their certain writing obligatory, sealed with their seals, became bound to the state of Missouri in the amount of the bond; that said Pitts had been duly elected and commissioned to the office of collector of the state and county revenue of the county of Hickory, and state of Missouri, and had entered upon, and was performing, the duties of said office; that the condition of the bond being void was, that he should collect and pay over the state and county revenues, and perform the duties of his office as such collector according to law. It charges, that, as collector of the revenue of Hickory county, in January, 1876, he made his settlement with the county court of said county, and that, at the date of said settle-

ment with the county court of Hickory county, the given sum was found in his hands as such collector, due and owing the different revenue funds of the county, which are specially set out, and he is charged with appropriating to his own use, and refusing to pay over, these several sums belonging to the revenue funds of the county.

This, certainly, is a statement of a cause of action, so far as the misappropriated revenue of the county is concerned, to collect which is the sole object of the suit, and shows that the county was the real party in interest, for whose use and benefit the cause was prosecuted in the name of the state. The cases to which we have been referred, of which *The State to use v. Matson*, 38 Mo. 489, is a type, are not, we think, applicable. The state is a mere nominal party, and the county does not sue in any representative capacity, but in its own right. The county is the real party in interest, and the proper and necessary party to recover the lost revenue funds belonging to the county, for which the bond is given as security, as well as to secure the state revenue. *State to use v. Patton*, 42 Mo. 530. But even if the petition failed to state a cause of action, yet being amendable, the judgment thereon is not a nullity; nor can its validity, or the rights of purchasers thereunder, be attacked in a collateral proceeding like this.

A further question in the case remains to be disposed of. After the institution of the suit on the collector's bond, attachments in aid thereof were taken out against the lands of the collector, and the lands of five of the sureties on the bond, and certain tax receipts in the hands of one of the Pitts, a surety on the bond, was also attached as the property of the collector, but no attachment was sued out, or levied upon the lands or property of this plaintiff, Dollarhide, or of Quigg, another surety in said bond. The return of the sheriff

shows a sale of the lands of Dollarhide (the plaintiff), and of Quigg and William Pitt, on the sixteenth day of May. Of the lands so sold on the sixteenth, those belonging to Dollarhide and Quigg, as we have seen, had not been attached, whilst those belonging to said William Pitt had been. The lands belonging to the col- lector, and those belonging to the other sureties in the bond, had been attached, and, as the returns show, were sold on May 17, or the day after.

The point made is, that, under the judgment and execution, the attached property must be first sold, and that the sale of plaintiff's land, on the sixteenth, "was unauthorized and void." All the land which had been attached, except such as was exempt, was, in fact, sold. The whole amount realized upon the sale of all the lands was $1324.50, of which sum two hundred and eighteen dollars was retained as costs, and a credit entered for eleven hundred and five dollars. The judgment entered in November, 1876, was, in round numbers, for thirty- six hundred and fifty-two dollars, and the interest, or penalties, added to the time of sale in May, 1877, had greatly increased the total amount. After the sale, therefore, of all the property levied on, including that which had been attached, there was still a large balance due on said execution or judgment. The judgment was special in this, that it declared the bond of the collector sued on a perpetual lien on the real estate of the col- lector, as provided in the statute, and sustained the attachment as to the collector and other specified sure- ties in the bond; but the judgment was also general, and authorized a levy upon property of all the defendants sufficient to satisfy the execution, whether the same was attached or not. The execution recites the names of the parties, the date and amount of the judgment, and the court in which it was rendered; it then recites the lien declared on the lands of the collector under the bond,

and the attachment liens against him and the five sureties, and then adds:

"These are, therefore, to command you that of the said described real estate and personal property, and if the same be not sufficient, then of any other of the goods and chattels, lands and tenements of the said defendants, John D. Pitts, William A. Pitts, Y. M. Pitts, D. B. Pitts, A. J. Pitts, Michael W. Dorman, William Dollarhide, John W. Quigg, Joseph Crates, and John Jackson, you cause to be made the debt, accruing interest, and costs aforesaid, and that you have the same before the judge of our said court on the second Monday in May, A. D., 1877, next, to satisfy said debt, interest, and costs, and have you then and there this writ certifying how you have executed the same."

So far as the sureties were concerned, they were all alike and equally responsible for the deficits of the collector under the bond and the decree establishing the attachment lien against the property of some of them, and a general judgment against all of them did not give them, as among themselves, any right to direct the officer as to which property should be first sold. As between the sureties and the collector, and principal in the bond, the rule may be otherwise, even under a judgment like this one, but, at most, they could, by proper showing to the court in that behalf, compel the release of the levy, or set aside the sale, only after showing that the property of the principal was sufficient and available for the satisfaction of the writ. In this case the entire property sold brought less than one-third the amount called for by the writ.

The sale of plaintiff's lands on the sixteenth, before the sale of a portion of the attached land on the seventeenth, if an irregularity at all, was one to which the court's attention should have been seasonably called. It appears that Dollarhide was present at the sale of the land to Smith, which was made on the sixteenth day of

Dollarhide v. Parks.

May and the deed acknowledged on the twenty-sixth of May. Court was in session for this period of ten days, during which plaintiff did nothing by motion, or otherwise, to modify, control, or set aside the sale, but permitted the same to be consummated and the deed made, and under these circumstances, we think he cannot be heard in that behalf in a collateral proceeding of this sort.

It also appears that thereafter said Dollarhide, with the other sureties, appeared before the county court and effected a compromise of the judgment on the collector's bond. They claimed, and received, a credit for the amounts realized from the sales of their lands under the execution, and settled and compromised the balance of the principal of the judgment at fifty cents on the dollar, the court knocking off the penalties. Whilst the application of the proceeds of a sale under execution is a matter over which the debtor in the execution generally has no control, yet, under the above facts, plaintiff, with the other sureties, by the compromise aforesaid, satisfied and discharged the whole judgment against them, and by their said acts in that behalf, not only plainly and manifestly assented, but actively desired and procured application of the proceeds of the execution sale in that way. They have thereby ratified the sale.

From all which it is perfectly manifest that the execution, contents and loss of the sheriff's amended deed, correcting the misrecitals in the original, was fully and satisfactorily established by the evidence in the cause ; and that the same was valid, and competent to transfer, and did transfer, plaintiff's title, unless some of the other objections, urged by plaintiff, are well taken, and these also, as we have seen, have no merit in them. It is manifest, therefore, that plaintiff, under all the evidence in the cause, is not the owner of the land, and has no standing in court, and for these reasons the judgment of the circuit court is reversed, in which all concur.