PINKIE HILER et al. v. SILAS R. COX et al.;
SILAS R. COX, Appellant.

Division One, April 1, 1908.

1. **TITLE: Finding of Court.** Where the whole issue in a partition suit tried to the court sitting as a jury, was whether a certain lost unrecorded deed conveyed property to a husband or his wife who survived him, the appellate court will not interfere with the court's finding, if the evidence admitted was competent under the pleadings, and that rejected incompetent.

2. **PARTITION: Consent to Sale: Reversal of Judgment.** Where all parties, after judgment in partition in favor of plaintiffs finding that the land belonged to the coparceners' father and not to their mother, consented that the land should be sold, and the costs paid and the balance of the proceeds except $600 should be distributed, and that that $600 should be held to pay a debt which their mother owed defendant in case the judgment in that respect should be reversed, the judgment cannot be reversed in its entirety. Thereby defendant destroyed any issue on appeal going to the validity of the judgment.

3. **EQUITABLE TITLE: Lost Unrecorded Deed.** Where the deed was delivered, followed by actual possession, and was afterwards destroyed by fire without ever having been recorded, and the whole issue is whether coparceners' father or mother was the grantee, the title of neither was an equitable one. The record of a deed does not create title, and the purpose of the action is not to vest a record title in plaintiffs or defendants or to remove a cloud upon their title, but is simply an issue of fact, namely, who was the owner of the legal title?

4. ————: **Estoppel: Consent to Sale Under Partition.** In such case, appellant by consent of record to a sale of the land under judgment in partition, after judgment rendered for respondents, waived the right on appeal to make the point that the said destroyed deed which had never been recorded conveyed an equitable title.

5. **TITLE: Lost Deed: Parol Evidence as to Grantee.** A deed was made by Joseph East, the owner of the land, in 1849, and delivered, and coparceners' father and mother moved into possession. In 1864 he died, and in 1875 the deed was destroyed by fire, having never been recorded. The widow lived on until four years before this partition suit was brought, in which the issue is whether the father or mother was the grantee, she being indebted to defendant at the time of her death. *Held*, that testimony by parties who saw the deed that the conveyance

ran to the father was competent evidence, as also was the inventory of his estate, filed by his administrator in 1865, which listed the land as his and described it by numbers and as "held by deed from Joe East."

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Charles Martin* for appellant.

(1)   Upon the issue made by the petition and answer plaintiffs must show legal title to the land. McCabe v. Hunter, 7 Mo. 355; 3 Pomeroy, Equity, sec. 1388.   The statutory mode of partition, such as this is, does not include equitable jurisdiction of the subject.   Spetts v. Wells, 18 Mo. 468; Rosin v. Griffith, 31 Mo. 171; Bradshaw v. Yate, 67 Mo. 233; Dameron v. Jamison, 71 Mo. 97; Holloway v. Holloway, 97 Mo. 628; Reed v. Robertson, 45 Mo. 580.   (2)   Plaintiffs did not show legal title to the forty acres in dispute, but were permitted by the court, over defendant's objection, to attempt to prove the contents of a deed which was lost or destroyed in 1872, without being recorded.   The title or right under a lost or destroyed deed not recorded cannot be established at law, except under the provisions of article 4, chapter 59, Revised Statutes 1899, but can be established by a proceeding in equity.   Wyman v. Cory, 43 Mo. 301, 48 Mo. 348; Bohart v. Chamberlain, 99 Mo. 622; Mason v. Block, 87 Mo. 329; Ins. Co. v. Smith, 117 Mo. 297.   (3)   Before the contents of a lost or destroyed deed or other instrument of writing can be proved by secondary evidence, the due and formal execution of the deed must be proved.   Perry v. Roberts, 17 Mo. 36; Attwell v. Lynch, 39 Mo. 519; Hunt v. Selleck, 118 Mo. 588; Shea v. Seibig, 8 Mo. App. 146; Zollman v. Tarr, 93 Mo. App. 234; Hollman v. Backus, 24 Mo. App. 629.

*Norton, Avery & Young* for respondents.

LAMM, J.—This is a suit to partition real estate in Lincoln county. The petition alleges that plaintiffs and defendants are the owners of, and tenants in common in, ninety-four acres of land (describing it) in two tracts—one of forty and the other of fifty-four acres. That certain of plaintiffs and defendants are each entitled to an undivided one-seventh thereof. That certain of defendants are each entitled to an undivided one forty-ninth thereof, subject to a dower interest in another defendant. It is not alleged who the ancestors of these parties were, or how their title originated. It was alleged that the land could not be partitioned in kind, equitably, and a decree of partition and order of sale were prayed.

Defendant Silas R. Cox filed a general denial and alone appeals from a decree partitioning the land as prayed in the petition.

At the trial it was shown that certain of plaintiffs and defendants (including Silas) were children and heirs of James R. Cox and Eliza Cox, his wife, both deceased and both dying intestate. That certain of the defendants were the children of James Cox, a deceased son of James R. and Eliza. That one of the plaintiffs, Colbert, had purchased the interest of John W. Cox, another son of James R. and Eliza.

On all hands it is agreed that the title to the forty was in James R. Cox at the date of his death in December, 1864. There is no dispute as to the names of the heirs of James R. and Eliza Cox and it appears they are all parties litigant. The only issue at the trial was whether the fifty-four-acre tract belonged to James R. Cox or to Eliza, his wife. It appears the land would descend to the same heirs with the same undivided interest in each whether it belonged to the father or the mother—the heirs and the tenancy in com-

mon being the same either way.   The mother died
some four years before the partition suit.   As we
gather, she owed her son, Silas, a certain amount.   If
she owned the fifty-four-acre tract, then her title would
descend subject to the payment of that debt—an ad-
ministration of her estate being pending.   On the
contrary, if she held a life estate, as dowress or other-
wise, then, that life estate falling in, the heirs of
James R. Cox take title by descent cast and Silas loses
his debt.

It is agreed, further, that the title to the fifty-
four acres was originally in one Joseph East.   That
he conveyed it in 1849 or 1848 to either James R. or
Eliza.   There is no question but what this deed was
made and delivered.   All parties claim under it.   It
was in the possession of James R. until his death in
1864.   It remained in the possession of his widow,
Eliza, and of the family afterwards until the year 1875
when it was destroyed by a fire burning the family
residence, and never was put of record.

Plaintiffs put in proof tending to   show   that
James R. Cox was grantee in that deed.   The defend-
ant Silas introduced evidence tending to show that
Eliza Cox was grantee in that deed.

Appellant objected to plaintiffs' testimony on that
score.   If, now, plaintiffs' evidence was competent
under the pleadings, the judgment was right.   If not
competent, the judgment may be wrong.   The case
was tried as a law case to the court sitting as a jury on
an issue of fact and we ought not to disturb the find-
ing of the lower court, on review, on the mere weight
of the testimony, though in this case it may with pro-
priety be said that the testimony was strongly in fa-
vor of plaintiffs' theory and the finding, *nisi*.

No instructions were asked or given.   No finding
of facts was asked or made.   If, then, on any possible

allowable view the judgment can be sustained, it should be.

I. The judgment in partition provided that the land should be sold and that the proceeds, after paying costs, should be distributed between the plaintiffs and defendants in accordance with their respective interests as therein set out. When the motion for a new trial was overruled, the following modification of the judgment was made by consent of all parties, to-wit:

"And the parties being in court consent and agree that inasmuch as the heirs of James R. Cox and the heirs of Eliza Cox being the same and the only contention by the defendant being that the land in controversy is subject to the debts of said Eliza Cox, and that the sum of six hundred dollars will be sufficient in any event to meet any and all liabilities against the estate of said Eliza Cox, they agree that notwithstanding such appeal the said real estate may be sold as in the order of the court heretofore made and that all of the proceeds of said sale except the sum of six hundred dollars be distributed. It is therefore ordered by the court that notwithstanding such appeal of said Silas Cox that said land be sold and all the proceeds thereof except six hundred dollars be distributed and that the sheriff will from the proceeds of said sale pay over to H. W. Perkins as trustee the sum of six hundred dollars to be held by him until such appeal be determined and that said H. W. Perkins as such trustee be required to give bond in the sum of twelve hundred dollars to hold and account for said $600 according to the further order of the court."

It appears also that on the heels of that modification of the judgment it was executed by a sale, a report of sale, approval of the report and an execution of a deed to the purchaser. In this condition of the rec-

ord, it is obvious that appellant waived his right to
have the judgment, as an entirety, reversed. If an ap-
pellant pays off a money judgment or consents that a
judgment be executed and agrees to abide the execu-
tion of the judgment, then by that act he "kills" any
issue on appeal going to the validity of the judgment
itself.    [Wait v. Railroad, 204 Mo. l. c. 505, *et seq.*]
If we reversed this judgment we would cut away the
grounds upon which the partition was made.    By so
doing we would undo what appellant consented should
be done, to-wit, that partition be made.    This we
ought not to do at the instance of the consenting ap-
pellant.    What appellant knit, shall we unravel?    If
he bind, shall we loose—thereby making discord out
of concord?    Therefore, this controversy seemingly
has changed from a question of the right to partition
and a controversy involving *title to real estate,* over
into a mere question relating to the right to $600 of
money arising from the sale.    In view of this, it is
doubted whether the title to real estate is any longer
directly involved.    It seemingly becomes a mere *inci-
dent* to the main question.    There being a doubt as
to the title to real estate being involved, on that doubt
a question arises, viz.: Has this court jurisdiction?

The case was appealed to the St. Louis Court of
Appeals and by that court certified to this court, pre-
sumably on the theory it involved title to real estate.
Counsel have not raised the question of jurisdiction
and, leaving that question with the doubt indicated,
we shall proceed (somewhat as a matter of grace) to
dispose of the case on its merits, out of respect to the
opinion of our learned brethren of the St. Louis Court
of Appeals, who (being without doubt) hold the case
belongs here.

II.    Appellant insists the action is not for equita-
ble partition, but is merely a statutory partition.
That, under the issues, it is a law suit as distinguished

from a suit in equity. This proposition may be conceded. From that proposition as a premise, appellant draws the conclusion that the title is an equitable one, if any (because the East deed was not recorded) and should have been tried out in chancery under a bill making the proper allegations. But this contention is without substance in this particular case, because any right Silas might have to the $600 is infected with the same vice, if vice it be. If Silas' theory is right then his mother only held an equitable title because (the deed being one and the same in either case) her deed was not recorded. If plaintiffs did not plead an equitable title, no more did Silas set up an equitable title in the mother, by his answer, and ask affirmative equitable relief. So, if the title of James R. Cox, if any, was an equitable one and hence plaintiffs are to be cast, then, by the same token, Silas must be cast, too, and we would have the anomaly of a partition of real estate, a sale and a conveyance *made irrevocable by consent*, and yet the court is stripped of all power to dispose of $600 of the proceeds. We hold that Silas R. Cox by agreeing to the sale and the partition, waived the right to make the point.

But is the title of James R. Cox, if any, an equitable one? And is the title of Eliza Cox, if any, an equitable one? We think not. Obviously, this is not a suit to establish a lost deed and spread a title of record. It is not an action against the heirs of Joseph East to vest the record title out of them and into the heirs of James R. and Eliza Cox, or to remove a cloud from the title. In this case it stands conceded that a deed was executed by delivery. That possession was taken, and that not only title was conveyed by the deed to some one, but that by the adverse and peaceable possession of a half a century the Statute of Limitations had created legal title in the Cox heirs as against the East heirs. Whether that legal title was

vested in the Cox heirs by the Statute of Limitations
or by the destroyed deed is of no consequence what-
ever, so long as it was vested. A deed speaks by de-
livery. The *record* of a deed does not create title—
it merely imparts *notice* of the title. As between the
parties, the deed is good without recording. [R. S.
1899, secs. 924 and 925.] The question narrows itself
down to one of mere fact, to-wit, who was the grantee
in that deed? It is familiar learning that an equita-
ble title in plaintiffs cannot be tried out in straight
ejectment, and yet it is common practice to prove a
lost deed or title by limitations in straight eject-
ment. [Nelson v. Brodhack, 44 Mo. 596; Wall
v. Shindler, 47 Mo. 282; Donaldson v. Williams, 50
Mo. 407; Bank v. Evans, 51 Mo. 335; Ridgeway v.
Holliday, 59 Mo. l. c. 447; Fulkerson v. Mitchell, 82
Mo. l. c. 20, *et seq.*] The reason underlying the fore-
going cases is that the title is a *legal* title although evi-
denced by a lost or destroyed deed or although created
by the Statute of Limitations.

III. Plaintiffs were allowed to introduce testi-
mony tending to prove, by parties who saw the deed,
that the conveyance ran to James R. Cox, as grantee.
They were allowed to introduce the inventory filed by
the administrator of James R. Cox's estate in 1865.
This inventory describes the land in dispute, as fol-
lows: "53 acres of land being the southwest quarter of
the northeast quarter of section 31, township 49, range
1 west, *held by deed from Joe East.*" Appellant ob-
jected to the parol testimony and to the inventory. We
think neither objection is good. The proof being that
the deed was destroyed and that it was unrecorded,
a *status* of things was shown permitting the introduc-
tion of secondary evidence. The parol testimony was,
therefore, admissible and the inventory was admissi-
ble. By section 69, Revised Statutes 1899, it is made
the duty of an administrator to inventory the real

estate of the deceased, describing the quantity, situation and title of such real estate. A presumption may be indulged that the administrator performed this duty. He, and the witnesses to the inventory, had access to the deed and when, for the purposes of the law, they wrote into the inventory that James R. Cox held title to the disputed land and that his title came by a deed from Joseph East, the law in an emergency may use the information it caused to be preserved for its own purposes. It may lay hold of this information in the absence of better. The trial court ruled correctly on its admissibility.

As we cannot disturb the judgment on our views of the weight of the testimony, and as there are no other questions raised materially affecting the merits, we affirm the judgment. Let it be so ordered. All concur.