## MINNIE NORTON et al. v. JOSEPH A. REED, Appellant.

### Division One, December 6, 1913.

1. **SALE OF REAL ESTATE TO PAY DEBTS: Publication of Notice Invalid: Sale Void.** Publication of notice of an application in the probate court to sell real estate to pay the debts of a deceased must be made for four weeks (twenty-eight days), and unless it was so made an order of sale and a deed made thereunder are void as against an action in ejectment by heirs of the deceased.

2. ————: ————: ————: **Recitals in Order of Sale Disproved by the Record.** Although the probate court's order directing the sale of real estate to pay debts recites a valid notice, yet this recital refers only to the facts appearing on the record and constitutes simply a legal conclusion from them, so that if the record shows the notice to have been in fact invalid, the order of sale and a deed made thereunder are void.

3. **ADVERSE POSSESSION: Proof of Duration: Burden.** The burden is upon one claiming by adverse possession to prove the full period of that possession.

4. ————: **Limitations: Statute Arrested by Former Suit Involving Same Issue: Nonsuit.** Plaintiffs bring action in ejectment, to which the defendants plead adverse possession beginning December 6, 1896. Three of these plaintiffs instituted suit August 4, 1906, against this defendant and others, including their coplaintiffs, involving title to the land now in suit. They filed an amended petition in that case November 26, 1906, and a second amended petition April 22, 1907. June 3, 1907, they took a voluntary nonsuit, and in October, 1907, the plaintiffs herein instituted this suit. *Held*, that the suit begun August 4, 1906, arrested the running of the ten-year Statute of Limitation, so that the plaintiffs, having suffered a nonsuit in June, 1907, could bring this suit in October of that year, as they did, without prejudice from the statute.

5. ————: ————: ————: ————: **Essentials Rendering Suits Identical.** In determining whether a suit, brought before the ten-year Statute of Limitations had run as to adverse possession, involved the same question at issue in this one, brought within one year after voluntary nonsuit in the former but after the ten-year period had elapsed,

the question is only whether this second suit involves an identical claim against which the old suit would have stopped the running of the statute had it been prosecuted successfully to final judgment. It does not matter that the petition in the first suit was inartificially drawn or that it commingled in the same count causes of action formerly cognizable both at law and in equity, if it stated that the plaintiffs were the owners of the particular tract of land involved in this suit, that they were entitled to the possession of it, and that the defendants wrongfully entered into possession, ousted the plaintiffs, and continued to hold the same.

Appeal from Reynolds Circuit Court.—*Hon. Joseph J. Williams*, Judge.

AFFIRMED.

*Stuart L. Clark, Arthur I. Brewster* and *Sam M. Brewster* for appellant.

(1) (a) The jurisdiction of the probate court of Reynolds county to order a sale of the real estate in controversy, attached upon the filing of the petition of the administrator, accompanied by the lists the law requires and the inventory of the property belonging to estate. Overton v. Johnson, 17 Mo. 422; Mount v. Valle, 19 Mo. 621; Grayson v. Weddle, 63 Mo. 523; Patte v. Thomas, 58 Mo. 173; Freeman, Void Judicial Sales (4 Ed.), 63. (b) The finding of the probate court that the order of publication had been published in the newspaper for more than four weeks before the first day of the term of court at which the order of sale was made, is conclusive in this action and cannot be collaterally attacked. Latriette v. Dorleque, 35 Mo. 233; Lewis v. Clarke, 52 Mo. 116; Freeman v. Thompson, 53 Mo. 183; Rumfelt v. O'Brian, 57 Mo. 570; Brawley v. Ranney, 67 Mo. 280; Robbins v. Boulware, 190 Mo. 50; Voorhees v. Bank, 10 Peters (U. S.), 449; State v. McCord, 207 Mo. 519; Freeman, Void Judicial Sales (4 Ed.), 81; 1 Woerner, Law of Adm., sec. 145. (c) The orders and judgments of the probate court are entitled to the same verity that is ac-

corded to judgments of circuit courts and are not the subject of collateral attack. Camden v. Plain, 91 Mo. 117; Sherwood v. Baker, 105 Mo. 472; Macy v. Stark, 116 Mo. 451; Price v. Real Estate Assn., 101 Mo. 107; Brawford v. Wolfe, 103 Mo. 391; Covington v. Chamblin, 156 Mo. 574; Robbins v. Boulware, 190 Mo. 51; Langston v. Canterbury, 173 Mo. 131; Desloge v. Tucker, 196 Mo. 587; In re Davidson's Estate, 100 Mo. App. 263; Cobe v. Ricketts, 111 Mo. App. 105. (d) It is only where the records of the probate court show that it is impossible to publish the order of publication from the time of the filing of the petition for an order of sale and the making of the order of sale by the court, that the same can be collaterally attacked. Valle's Heirs v. Fleming, 19 Mo. 454; Mount v. Valle, 19 Mo. 623; Garner v. Tucker, 61 Mo. 427; Johnson v. Beazley, 65 Mo. 250; Agan v. Shannon, 103 Mo. 661; Kane v. McCown, 55 Mo. 200; Brawley v. Ranney, 67 Mo. 283. (2) (a) Neither the first count of the original or the first amended petition stated any facts constituting any cause of action in favor of plaintiffs authorizing the setting aside the deed of the administrator. The mere statement that said deed was void was but a conclusion of the pleader and stated no facts from which the court could find that said deed was void. Facts, not conclusions, must be stated. Humphreys v. Milling Co., 98 Mo. 552; Rogers v. Insurance Co., 186 Mo. 255. (b) Nor did the second count in either petition state any facts sufficient to constitute a cause of action in favor of plaintiffs for the recovery of the possession of the real estate, for the reason that there was no land described in either count. Newman v. Lawless, 6 Mo. 279; Livingston County v. Morris, 71 Mo. 603. (c) Each count in a petition must contain a complete statement of the facts constituting the cause of action and be complete within itself and cannot refer to other counts for constitutive averments. Clarke v. Iron Co., 9 Mo.

App. 446; Boecker v. Railroad, 10 Mo. App. 451; Weber v. Squier, 51 Mo. App. 601; Graves v. Railroad, 133 Mo. App. 91; Russell v. Railroad, 83 Mo. 507; Bliss, Code Pleading, sec. 121.   (3) Neither the original or the first amended petition having stated facts sufficient to constitute any cause of action in favor of the plaintiffs, either to set aside the administrator's deed, or for the recovery of the possession of the real estate in controversy, the Statute of Limitation was not arrested by the filing of either petition and the cause of action was barred by limitation. Lily v. Tobein, 103 Mo. 490; Bricken v. Cross, 163 Mo. 499; Walker v. Railroad, 193 Mo. 474; Cytron v. Transit Co., 205 Mo. 703.

*Robert L. McLaran, J. B. Daniel* and *George E. Smith* for respondents.

(1) No sufficient notice was published in this case, before the order of sale was made.  This defect invalidated the whole subsequent proceeding.  The giving of such notice as prescribed by the statute, is jurisdictional.  Valle v. Fleming, 19 Mo. 455; Teverbaugh v. Hawkins, 82 Mo. 180; Hutchinson v. Shelly, 133 Mo. 400.   (2) Notice of an application by an administrator to sell real estate to pay debts must be published for four weeks before the beginning of the term of court at which those interested are required to appear and show cause against the order of sale. Sec. 148, R. S. 1879.  Four weeks means twenty-eight days from the first publication to the date of the beginning of the next term when parties are required to appear and show cause against the order, if any they have.  If the order is made on less than twenty-eight days' published notice, the order is void, and the probate court has no jurisdiction to enter such an order of sale, as against the persons entitled to notice.  Young v. Downey, 145 Mo. 250, 150 Mo. 317;

Robbins v. Boulware, 190 Mo. 33.. (3) The first and second petitions filed in the present suit were not model pleadings, but they did contain enough matter. to amend by, and did suspend the running of the Statute of Limitations. (4) The recital in the order of sale that the administrator shows to the court that the notice by publication addressed to the parties in interest had been published for more than four weeks prior to the first day of the May term of said probate court, must be held to refer to the specific publication shown by the sworn proof of publication filed and made a part of the record in the same case. Judge SHERWOOD, speaking for this court, quoting from Mr. Freeman, says: "But no presumptions in support of the judgment are to be allowed in opposition to any statement contained in the record. If an act is stated in the roll as having been done in a specified manner, no presumption arises that at some future time the act was done in a more efficient manner. If it appear that the process was served in a particular mode, no other and different service can be presumed. To indulge such a presumption would be to contradict the record, which imports absolute verity. When, therefore, the record shows that certain steps were taken to procure jurisdiction and the law does not consider these steps sufficient, the judgment will be regarded as void for want of jurisdiction over the defendant." Freeman on Judgments, sec. 125; Cloud v. Inhabitants, etc., 86 Mo. 368; Stark v. Kirchgraber, 186 Mo. 646.

BROWN, C.—This is an appeal from a judgment for plaintiffs for the recovery of a tract of land in Reynolds county described as follows:

"All that part of the east half of lot three of the northwest quarter of section five in township twenty-nine, north of range one east that lies west of the right of way of the Missouri Southern Railroad, and

west and south of a line commencing at a point on the eastern side of said lot three, seven chains and thirty-seven links south of the northeast corner of said lot three, and running thence west nine chains and fifty-nine links, thence north one chain and thirty-three links, thence west four chains and thirty-three links, thence north to the north line of said lot three, excepting therefrom a strip three hundred feet wide on the south side of the east half of said lot three.''

The original petition was filed October 23, 1907, and is not set out in the record. The amended petition upon which the case was tried was filed in term November 27, 1907. It is an ordinary petition in ejectment for an undivided four-fifths of the land described in it, to which the plaintiffs assert title by descent from Benjamin C. Vandyke (who died intestate in 1884), being four of the five children who survived him. It charges the ouster of August 4, 1901.

The defendant claims through an administrator's deed made May 13, 1889, by J. S. Rogers, administrator of Vandyke, to one Thomas Piles, for a consideration of seventy-five dollars, and also by adverse possession.

On August 4, 1906, the plaintiffs Minnie Norton, James T. Vandyke and Catharine Dougherty, three of the children and heirs of the said Benjamin C. Vandyke, brought suit against this defendant, with I. F. Reed, William H. Reed, John L. Copeland, John Cooper, Bessie Cooper (born Vandyke), —— Cooper, —— Cooper, John C. Vandyke and others, in the circuit court for Reynolds county returnable at the November term. The Coopers mentioned as defendants are the husband and children of Bertie Cooper, a deceased daughter of Benjamin C. Vandyke, and John C. Vandyke is his son. The defendants other than the Vandyke heirs were occupying claimants in severalty of the land included in the administrator's sale already

253 Mo. 16

mentioned, which covered not only that now in controversy, but another tract described as twenty-five acres off the west side of the east half of lot two of the same quarter section. The petition attacked the administrator's deed in the following language: "Plaintiffs allege that the said deed was of no effect and void. That the said J. S. Rogers had no authority at law to make the same, but that said deed constitutes a cloud upon the title of these defendants (plaintiffs) to the said lands which in equity and good conscience ought not to be." Plaintiffs then "for a further cause of action . . . state that on the 10th day of August, 1896, they were entitled to the possession jointly with the defendants John C. Vandyke and Bertie Cooper . . . of all the lands above described. That on the 20th day of August, 1896, the said defendants last above named wrongfully entered into the possession of said lands and ousted these plaintiffs, . . . and still hold possession thereof." There is a single prayer for relief in the following words:

"Plaintiffs pray the court to set aside and for naught 'hole' the said deed made by the said J. S. Rogers to the said Thomas Piles as aforesaid and to set aside and for naught hold all of the mesne conveyances between the said Thomas Piles and the defendants herein; that the court ascertain and by its judgment and decree determine the damage by these plaintiffs sustained by reason of the waste committed by the defendants while in the possession of the said lands, if any, the value of the rents, issues and profits, and the improvements made thereon, if any, by these defendants and each of them, and that judgment be rendered against the said defendants and each of them for such sum as the court may find to be just and for the recovery of the possession of the premises. Plaintiffs pray for such other and further orders, judg-

ments and decrees as to the court shall seem just and
proper and for costs.''

At the following November term (November 26,
1906) the plaintiffs filed an amended petition con-.
structed practically on the same lines, except that all
the Vandyke heirs were made plaintiffs.   On April
22, 1907, a second amended petition was filed, in which
Minnie A. Norton, Catharine Dougherty, John C. Van-
dyke and James T. Vandyke are plaintiffs, and Jo-
seph A. Reed is sole defendant.   This last petition
was straight ejectment for the land in controversy
in this suit, omitting the other tract.   It charges the
ouster as of August 4, 1901.   The next entry in the
case was at the May term, 1907, and on June 3rd, as
follows:

''Minnie Norton et al.

    v.

''Jos. A. Reed.

''At this day by leave of court plaintiffs take a
voluntary nonsuit, whereupon it is adjudged by the
court that defendant recover of and from plaintiff
his cost in this behalf expended and have execution
therefor.''

The undisputed evidence shows that the defend-
ant's predecessors entered the premises in contro-
versy on some unknown date within ten days after
the rendition of a judgment in ejectment entered No-
vember 26, 1896.   The proceedings in the administra-
tor's sale through which the defendant deraigns his
title are set out in the record as follows:   On Febru-
ary 10, 1888, J. S. Rogers, administrator of the estate
of B. C. Vandyke, deceased, filed his application for
the sale of the land in controversy, containing 30.29 .
acres, together with twenty-five acres off the west side
of the east half of lot two in the same quarter section,
for the payment of debts of the estate, subject to the
homestead rights of the widow and children of the

deceased. At the February term of the probate court and on February 14, 1888, this petition was presented and taken up by the court and publication ordered. In this order the land was described as follows:

"Twenty-five acres on the west side of east half of lot two, northwest quarter of section five, township twenty-nine, range one east, and east half of lot two, northwest quarter of section five, township twenty-nine, range one east, except eight acres deeded to A. B. Winchell in northeast corner of said lot, subject to the homestead of Mattie A. Rogers, Bertie E. and James Vandyke, widow and minor heirs of the estate of B. C. Vandyke, deceased."

On May 15th proof of publication, accompanied by a copy of the order as published was filed in the probate court. This proof is as follows:

"State of Missouri, ⎱ ss.
"County of Reynolds ⎰

"A. P. Shriver on oath says he is the publisher of the Reynolds County Outlook, a newspaper published in Centerville, Reynolds county, Mo., and that the annexed notice was published in said paper for four successive weeks as follows: April 20th, 1888, Vol. 11, No. 36; April 27th, 1888, Vol. 11, No. 37, May 4th, 1888, Vol. 11, No. 38, May 11th, 1888, Vol. 11, No. 39."

The notice annexed to the proof is in words and figures following:

## "ORDER OF PUBLICATION.

"State of Missouri ⎱ ss.
"County of Reynolds. ⎰

"In the Probate Court, February Term, 1888.
"Estate of B. C. Vandyke, deceased.
"J. S. Rogers, Administrator *de bonis non*.
"Order of Publication, Tuesday, February 14th, 1888.

"Now on this day comes J. S. Rogers, administrator *de bonis non* of the estate of B. C. Vandyke, deceased, and presents to the court his petition praying for an order for the sale of certain real estate of which said B. C. Vandyke died seized described as follows: 25 acres, on west side of east hf of lot 2 nw qr sec 5 tp 29, 1 e and e hf lot 3 nw qr sec 5 tp 29 r 1 e, except 8 acres deeded to A. B. Winchell in north-west corner of said lot, subject to the homestead of Mattie A. Rogers, Birtia E. and James Vandyke, minor heirs of the estate of B. C. Vandyke, dec'd, to pay the debts of said estate which said petition was accompanied by the account, list and inventory, as required by law, showing that said estate is indebted and that said debts are unpaid and that there is not sufficient assets on hand to pay the same; on examination thereof it is ordered by the court that all persons interested in said estate of said deceased be notified that application as aforesaid has been made and that unless the contrary be shown on or before the first day of the next term of this court to be held on the 14th day of May, 1888, next, an order will be made for the sale of the real estate in said petition described, or so much thereof as shall be sufficient for the payment of said debts and the expenses of said sale, and it is further ordered that this notice be published in some newspaper published in said county of Reynolds for four weeks prior to the next term of this court.

"A true copy of the original order now of record.

"Attest with seal of court this 20th day of March, 1888.

"E. D. Brawley,
"Judge of Probate and Clerk."

The order of sale was introduced by plaintiffs from record No. 2, at page 604, in which the land ordered sold is described as follows: "25 acres on west side of east half of lot 2, N. W. quarter, section 5, townshp 29, range 1, east, except 8 acres deeded to

A. B. Winchell in the northeast corner of said lot, subject 'of' homestead of Mattia A. Rogers, Bertia E. and James Vandyke, minor heirs of the estate of B. C. Vandyke, deceased.''

The defendant, against the objection of plaintiffs, introduced the minute book of the probate court containing an entry of the same order, signed by the judge, in which the land was properly described. This was admitted. The next entry in that proceeding shown by this record is as follows:

"REYNOLDS COUNTY PROBATE COURT.
"November Term, 1888, 3rd Day of the Term, Nov. 14, 1888.
"Estate of B. C. Vandyke, deceased.

"Now at this day comes J. S. Rogers, administrator *de bonis non* of the estate of B. C. Vandyke, deceased, and shows to the court that the sale of the real estate made at the August term of this court was not made in compliance of law not having the same appraised as the law directs, the sale is therefore rejected by the court and it is further ordered by the court that the said administrator advertise and resell as the law directs and make his report at the next regular term of this court.''

The administrator's deed is in the usual form, recites the original order of sale already referred to, and that sale took place February 11, 1889, but does not refer to the previous sale, or any subsequent order or proceeding for a resale. At the trial, which was by the court without a jury, the defendant asked and the court refused the following declarations of law.

"2. The court declares the law to be that the administrator's deed read in evidence on part of the defendant was sufficient to pass the title to the lands therein described to the grantee therein named, and that the title and right to possession of the lands involved in this suit, which constitute a part of the lands

conveyed by said administrator's deed, is in the defendant and the plaintiffs are not entitled to recover the same and the finding should be for the defendant.

"3. The court declares the law to be that plaintiffs' action to recover the premises sued for in this action was and is barred by the ten-year Statute of Limitations and the finding should be for the defendant.

"4. The court declares the law to be that the first petition filed in this cause did not state any cause of action for the recovery of the possession of the premises sued for, and that the filing of said petition did not arrest the running of the ten-year Statute of Limitations.

"5. The court declares the law to be that the first amended petition filed in this cause did not state any cause of action for recovery of the possession of the premises sued for in this action, and that the filing of said first amended petition did not arrest the running of the ten-year Statute of Limitations."

These state sufficiently, in a general way, the theory upon which the case was tried.

I. The plaintiffs say that the administrator's deed under which the defendant claims, is

Sale of Real Estate to Pay Debts: Invalid Notice. void, because the order of sale by the Reynolds County Probate Court was made without giving the notice which the statute requires, and was therefore void; so that the deed made by its authority conveyed nothing.

They do not deny that the orders and judgments of the probate court are entitled to the same presumptions of truth in their statements that are accorded to the judgments of the circuit court in exercising a similar jurisdiction. They contended, however, that the courts must hear before they judge, and that all valid judicial action involves the opportunity to be heard. When the jurisdiction of the court is invoked, as was

Norton v. Reed.

done by the administrator of Vandyke by filing his petition for the sale of the land for the payment of the debts of his intestate, it remains to acquire jurisdiction of the persons of all having an adverse interest to be affected, which may be done by their voluntary appearance or by the service of notice of the proceeding. Without such appearance or notice the vital requisite of all judicial action is wanting. In all cases where the parties to a legal controversy do not appear the first question for the court to determine is whether they have been given the opportunity to appear by having received such notice as the law deems sufficient. It would be absurd to say that one whose rights are to be judicially concluded has the constitutional right to a hearing, and then to condemn him by a judicial finding, made in his absence and without notice, that he has had the opportunity to be heard.

It is to guard against such absurdities, that the law has prescribed certain procedure by which the acts of public officers, each acting in his own sphere, are written down and faithfully preserved, so as to show the truth when human memory, entangled, as it is sure to be, with human interests, shall have become a snare for the feet of the unwary. When a party proceeded against does not voluntarily appear and he is within the jurisdiction, formal process is issued under the seal of the court if it be of record, and the formal return of the sworn and bonded officer to whom it is entrusted for service must be indorsed on it; all of which is incorporated in the judgment roll and made a part of the permanent record of the court. If he is without the jurisdiction, so that he cannot be personally notified by its officers, and his property becomes the target of the law, that constitutional blessing called due process of law seems to require as a prerequisite to its taking or condemnation, that constructive notice be substituted for the actual notice

required when practicable. This is usually served by
publication, as in the case we are now considering.
Its process is a formal order of the court placed upon
its record as solemnly and permanently as is the final
judgment, and evidence of the service of this, like
the return of the officer on his personal process, is
incorporated in the judgment roll.

In this case the court became vested with jurisdic-
tion over the subject of the proceeding by the filing
of the administrator's petition asking for the sale
of the two tracts of land separately described in it,
and that the statutory notice by publication be given.
This order must provide that all persons interested
in the estate be notified of the filing of the petition,
and that unless the contrary be shown on the first day
of the next term of the court an order will be made
for the sale of the whole or so much of the real estate
as will pay the debts of the deceased. This order, as
we have already said, constitutes, in fact, the process
of the court which was required to be served by publi-
cation in a newspaper. While it described correctly
one of the tracts of land which the administrator had
included in his petition, it did not describe the tract
which is the subject of this controversy. Whether
this omission alone would have been fatal to the pro-
ceeding is unnecessary, in view of the subsequent pro-
ceedings, to decide.

The notice was published with the addition of
the description of the tract of land involved in this
suit. The statute (R. S. 1889, sec. 147) required it to
"be published for four weeks in some newspaper in
the county in which the proceedings are had, or by
ten handbills, to be put up at ten public places in
said county at least twenty days before the term of
the court at which any such order will be made, in
the discretion of the court." The court exercised its
discretion by directing the publication to be made in
a newspaper. The statute further provided that "up-

on proof of publication . . . as provided in the next preceding section, the court shall hear the testimony, and may . . . make an order for the sale of such real estate, or any part thereof in this State, at public or private sale." It will be observed that the court is required to receive proof of publication. Being a court of record it may and should make a record of this proof, and it did make such record in this case in two ways: (1) The judge over his own hand filed with the papers constituting the judgment roll the signed statement of the publisher of the paper that he had published it in his newspaper for four successive weeks as follows: "April 20th, 1888, Vol. 11, No. 36; April 27th, 1888, Vol. 11, No. 37; May 4th, 1888, Vol. 11, No. 38; May 11th, 1888, Vol. 11, No. 39." To this proof was added the statement in the form of an unsigned jurat that it had been sworn to by the publisher who signed it, and attached to it was a copy of the order with the description of the land in controversy added, as published. This was filed on May 15th. The first day of the term was May 14th and the order of sale was made on the following day, on which the proof of publication was filed. It recited that the order of publication had been published for more than four weeks prior to the first day of the term. It will be seen, by inspection, that the first insertion as stated in the proof was on April 20th, only twenty-four days previous to the first day of the term, and only twenty-five days previous to the actual making of the order of sale.

That the period of four weeks that the statute required this notice to be published was a full period of twenty-eight days is not only evident from the words themselves by the application of their ordinary and usual meaning in such a connection, but has been permanently settled by the adjudications of this court. [Young v. Downey, 145 Mo. 250, 254, 259; same case,

150 Mo. 317; Robbins v. Boulware, 190 Mo. 33.] That the notice is an indispensable prerequisite to the jurisdiction of the court to make the order of sale is equally well settled in the same cases. The Young case is not distinguishable in any particular from the one we are considering. In that case the order of sale recited that the notice had been published according to law. The proof of publication shows that there had been insertions of the notice in a weekly newspaper published in the county, that is to say, on September 8th, 15th, 22d and 29th. The first day of the next term was October 2d, so that the same number of days and the same number of weekly publications intervened in that case as in this, yet the court decided that on account of the defective publication in that respect the order of sale and deed made in pursuance of it were void. On the second appeal reported in the 150th Missouri the attention of the court was called to the fact that it had decided differently in Cruzen v. Stephens, 123 Mo. 337, and after a full review of many cases both in this and other States, it expressly overruled that case.

As we have already said, the same presumption prevails in favor of the action of the probate court in **Recitals in Order Disproved by Record.** this respect that would apply in case of similar action by a court of general jurisdiction. This same question has been frequently before this court involving the validity of judgments rendered in the exercise of the general jurisdiction of the circuit courts, and it has been constantly held that although in such cases the judgment recites a valid notice this recital only refers to the facts appearing in the judgment roll when such facts are so preserved, and constitutes simply a legal conclusion drawn from them, so that if the fact does not sustain the conclusion the judgment rendered upon such notice is void. [Cloud v. Pierce City, 86

Mo. 357, 369; Feurt v. Caster, 174 Mo. 289, 303; Stark v. Kirchgraber, 186 Mo. 633, 646; Howell v. Sherwood, 213 Mo. 565, 567, same case, 242 Mo. 513, 530.] In the case first cited, quoting from Freeman on Judgments, the court said: "But no presumptions in support of the judgment are to be allowed in opposition to any statement contained in the record. If an act be stated in the roll as having been done in a specified manner, no presumption arises that at some future time the act was done in a more efficient manner. . . . Generally the recital of jurisdiction or of service of process contained in the judgment will be construed in connection with the whole record and will be deemed to refer to the kind of service shown by the other parts of the record. . . . If an attempt at notice appears in the record, the finding, if a general one, refers to and is limited by such attempted notice." [368, 369.] It has constantly adhered to the same doctrine up to the present time. The fact that the judge before whom the law requires the proof to be taken did not sign the blank jurat appended to it makes no difference. The statute does not require the oath to be preserved in that way. Placing its substance in the judgment roll with a formal filing was the act of the judge in his judicial capacity. In this case it was expressly identified in the body of the order of sale, which recited the publication of the notice in that particular newspaper. It follows that the order of sale and the deed made thereunder are void.

II. The only remaining question is whether this suit is barred by limitation, or, to be more specific, whether the title has been divested from **Adverse Possession.** the heirs of Vandyke by the adverse possession of the defendant and those through whom he claims. The only evidence in the record of the date of the actual ouster of the plaintiffs is that it occurred within ten days after the twenty-sixth day of

November, 1896. The burden being upon the defendant to prove the full period of his adverse **Proof of Duration.** possession it will not be deemed to have begun until December 6, 1896. This suit was not instituted until October, 1907, so that the full period of ten years had elapsed, and the entry of plaintiffs would be barred, unless the running of the statute had been arrested before that time. The plaintiffs claim that it was arrested by the **Arresting Statute of Limitations.** institution of a suit on August 4, 1906, in which three of these plaintiffs were plaintiffs, and this defendant, the remaining heirs of Vandyke, and others, were defendants. This suit was continued by the filing of an amended petition on November 26, 1906, still within ten years from the date of the ouster proven, so that we will disregard the original petition and consider the averments and arrangement of parties in the amended petition alone. We will also, for convenience and simplicity of statement, keep in mind that the question of adverse possession not only involves the right to maintain a suit, but is a question of title; for it is settled that when continued for the requisite time, it transfers the title from the owner to the occupant as effectually as would a deed; so that thereafter he stands as well with respect to such title when out of possession as if his occupancy were continued. [Fulkerson v. Mitchell, 82 Mo. 13; Nelson v. Brodhack, 44 Mo. 596; Ridgeway v. Holliday, 59 Mo. 444, 453; Barry v. Otto, 56 Mo. 177, 179; Hiler v. Cox, 210 Mo. 696, 703; Biddle v. Mellon, 13 Mo. 335, 341.] It may also be helpful to remember that there is, in this State, but one form of action for the *enforcement* or *protection* of private rights or the *redress* or *prevention* of private wrong. To institute an action for any of the four purposes enumerated, all persons having an interest in the subject of the action, and in obtaining the relief desired, may be joined in a petition as plain-

tiffs, against all or as many of the persons liable as they may think proper. If there is any defect of parties so made, or if several causes of action have been improperly united, and the matter appears upon the face of the petition, any defendant may demur; and if it does not so appear he may make the objection by answer; and if he does not make it either by demurrer or answer he will be deemd to have waived it. If the action should happen to be "for the recovery of possession of premises" (R. S. 1909, sec. 2382), in which two or more plaintiffs shall be joined, any one or more may recover any interest he or they may be entitled to in the same manner as if they had brought separate actions, even though others fail to prove any interest (*Id.*, sec. 2391). And where the land sued for is held in separate possessions by different defendants the plaintiff may be compelled by motion to elect against which he will proceed (Keene v. Barnes, 29 Mo. 377), and where it is not so taken advantage of judgment may be rendered against each for his possession. [Sutton v. Casseleggi, 77 Mo. 397.]

Applying these principles we do not hesitate to hold that the suit instituted August 4, 1906, involved, among others, the very matter at issue in this. The petition may have been inartificially constructed. It no doubt commingled in the same count, contrary to the rules of good pleading, causes of action formerly cognizable both at law and in equity. It stated, however, in terms not to be mistaken, that the plaintiffs were the owners of the particular tract of land involved in this suit; that they were entitled to the possession of it, and that the defendants wrongfully entered into the possession of the same lands and ousted the plaintiffs, and continued to hold the same. The statement that they had no adequate remedy at law in no wise weakened the force or effect of this statement of facts under our system of pleading; nor did the anxiety they expressed to have the administra-

Norton v. Reed.

tor's deed removed as a cloud upon their title. There may have been inconsistent statements in the petition. If so it was a matter to be settled in due course by the court in which the cause was pending. We are not now trying a demurrer to that petition, but we are determining whether its presentation was the commencement of an action involving the same question now presented to us, which is the ownership and right to the possession of the land involved in this suit. We hold unhesitatingly that it was. It follows that the plaintiffs might suffer a voluntary nonsuit, as they did, without prejudice from the operation of the Statute of Limitations, provided they should begin a new action within one year after the nonsuit suffered. It is not necessary that the new suit should be in the same form or along the lines of the same theories as the old one. It is only necessary that it should involve an identical claim against which the old suit would have stopped the running of the statute had it been prosecuted successfully to final judgment. As ejectment by the same parties or some of them against one of the same defendants for a part of the same land accurately answers this description, it follows that the judgment of the circuit court was right, and it is affirmed.

PER CURIAM.—The foregoing opinion by Brown, C., is adopted as the opinion of the court. All of the judges concur, except *Bond, J.,* not sitting.