C. T. McCONNELL, Appellant, v. JULIUS H. DEAL et al.

In Banc, December 20, 1922.

1. **EQUITY: Sale of Entailed Lands: Necessity: Isolation.** A court of equity cannot order the sale of lands conveyed to a grantee and the heirs of her body, and the proceeds invested by a trustee, the interest to be paid to the life tenant during her life, and the sum for which it was originally sold to be paid to her bodily heirs at her death, on the sole ground that the land, unless sold, will become isolated, since the Constitution and statutes provide for the establishment of a private way of necessity connecting with a public road, and therefore the necessity to sell does not exist. And a judgment ordering the sale of such contingent remainder, being void, may be collaterally attacked.

   *Held,* by GRAVES, J., dissenting, that a court of equity has jurisdiction to order the sale of a contingent remainder to save it from destruction and to preserve it for the life tenant and remaindermen; and since the court had such jurisdiction, and recited in its decree that the necessity did exist and that it was to the interest of all parties concerned that the land be sold and the proceeds placed in the hands of a trustee, to be reinvested by him or held for their use and benefit, it will not be held in a collateral proceeding that no absolute necessity to sell was shown to exist. [Distinguishing Heady v. Crouse, 203 Mo. 100.]

2. ———: **Jurisdiction: Decree Contrary to Settlement Upon Bodily Heirs: Collateral Attack.** Jurisdiction consists not only of having the parties in court, but power to render the particular judgment in the particular case. A court of equity cannot overturn a solemn and lawful settlement of an estate made in favor of bodily heirs, born and unborn. Where the owner of land conveyed it to her daughter and "the heirs of her body," reserving a life es-

McConnell v. Deal.

tate in herself, a court of equity had no jurisdiction, in a suit by the grantor and her daughter against the daughter's then living children, sued in their own right and as representatives of unborn bodily heirs, to order said land sold, and the purchase price placed in the hands of a trustee, who was to loan and invest it and turn the income over to the life tenants, and upon the death of both to distribute the fund among the daughter's then living bodily heirs. The court being without jurisdiction to render such a decree, its judgment therein is subject to collateral attack. [Following Heady v. Crouse, 203 Mo. 100.]

*Held*, by GRAVES, J., dissenting, that a court of equity does have power, before the termination of the life estate, to order land conveyed to the grantor's daughter and the heirs of her body, to appoint a trustee to sell it and re-invest or loan the proceeds and hold the fund for the benefit and use of the grantees, in order to preserve the estate from destruction. And upon allegations and proof that the forty acres so conveyed was a part of and had for many years been profitably used in connection with a farm of 300 acres; that the remaining 260 acres, belonging to said daughter's husband, had been sold and the sale consummated, and said purchaser had agreed to purchase said forty acres at an agreed fair price, upon the tender to him of a merchantable title; that said forty acres, used in connection with said farm, was most valuable, but unless sold to said purchaser will become an isolated tract, not connected with any public road, and cannot be rented for a fair monthly value on account of its inaccessibility, as the same will become wholly inclosed and cut off by lands of other parties and will be much depreciated in value and no longer productive of a reasonable income, a court of equity had jurisdiction, before the termination of the life estate, to appoint a trustee, require him to give bond, order him to convey said land to the purchaser at the agreed price, receive the proceeds and either re-invest or loan them, and pay the net income to the life tenant during her life, and at her death to distribute the fund among her then bodily heirs. And the court having jurisdiction to render said decree, whether the proof sufficiently sustained its recitals and established the absolute necessity to sell is a question which cannot be considered upon a collateral attack.

3. ——: ——: Judgment Within Purview of Pleadings. A court has no power to render a judgment which is not within the purview of the pleadings. Where the petition alleged that a certain forty acres of land was isolated and inaccessible and therefore could not be rented for a fair value; that it was conveyed by its

McConnell v. Deal.

owner to her daughter and her bodily heirs; that it was to the interest of all persons concerned that a trustee be appointed to sell said land and re-invest or loan the proceeds, and that the income or interest thereon be paid to the life tenant and upon her death the fund be distributed among her then bodily heirs, and prayed for the appointment of such trustee, a sale of the tract by him, and that the proceeds be placed at interest by him, etc., a decree appointing a trustee and ordering him to convey the tract to a prior contract purchaser at an agreed price, without a finding that such price was its reasonable value, is not within the purview of the petition, or the power of the court, but was the taking of private property without due process of law.

*Held,* by GRAVES, J., dissenting, that the petition in said cause alleged that said forty acres of land was a part of and for many years had been used in connection with a farm of 300 acres; that said purchaser had contracted to purchase the whole farm, and the sale of 260 acres of it had been consumated; that said purchaser had refused to accept a conveyance of the forty acres from said daughter and her husband on account of the condition of the title; that the said forty acres "unless the same be sold and conveyed to said purchaser, will become an isolated tract, not connected with any public road, and cannot be rented for a fair monthly value on account of its inaccessibility, as the same will become wholly inclosed and cut off by lands of other parties and will become much depreciated in value and no longer productive of a reasonable income"; that it was "to the interest of all parties concerned that a trustee be appointed and said forty acres be sold by him and the proceeds be held and loaned by him or by him be re-invested under the order of the court, and that the proceeds be held under the exact terms provided by the deed" of the original grantor to her said daughter and the heirs of her body, and prayed that a decree be made "ordering and directing" that said forty acres "be sold at private sale to the best advantage," that the husband of said daughter be appointed trustee for making such sale and that he be required to report to the court "for its approval any sale made by him," and therefore a decree directing the trustee to convey the land to said purchaser at the contract price agreed upon and to take the purchaser's note for said amount, secured by a deed of trust on land, was within the scope of the petition, which alleged that it was to the interest of all parties concerned that said forty acres "be sold and conveyed to said purchaser," and said decree is therefore invulnerable to collateral attack.

4. ———: ———: Contingent Remainder: Sale Before Termination of Life Estate: Suit Against Living Heirs: As Representatives of Unborn Heirs: Fiction. Where the owner of land conveyed it to her daughter and the heirs of her body, reserving a life estate in herself, and a suit is brought by said grantor and said daughter against the daughter's four living children, who are sued as the living bodily heirs and as a class representing such bodily heirs as may subsequently be born, asking that a trustee be appointed and the land sold and the proceeds placed in his hands to be held and loaned by him for the benefit of the life tenants and all the bodily heirs, born and unborn, it cannot be held that the four living children represent those who would take the remainder upon the termination of the life estates, for all of them may predecease their mother, and in such case there would be no privity between them and their descendants, and the remaindermen would take as purchasers and not as heirs of such children.

Held, by GRAVES, J., dissenting, that where property is conveyed to a grantee and the heirs of her body, and all her living bodily heirs are made parties, as not only representing themselves, but also as representing the unborn class of heirs to which they belong, they fully in all respects represent the possible unborn issue of the life tenant in a suit to have said real estate converted into money, to be held by a trustee for the grantees, and such possible unborn issue are as firmly bound by the decree as they would be were they in existence and parties to the suit.

Held, also, that all the bodily heirs of said life tenant, having been made defendants and having defaulted, thereby in effect joining their mother in the relief sought, they are estopped to dispute the validity of the decree, which was as much for their benefit as for hers, and also to dispute the sale of the real estate made by the trustee appointed by said decree; and likewise will the unborn possible bodily heirs of such life tenant be bound by the estoppel of the living heirs of the class.

5. ———: ———: Lands Conveyed to Grantee and Heirs of Her Body: Not Trust Estate. A conveyance of lands by an ordinary warranty deed to the grantor's daughter, and the heirs of her body, in which the grantor reserves a life estate, does not create a trust estate, and in the absence of fraud, mistake or accident a court of equity cannot declare a trust. A court of equity can construe and administer trusts, but it cannot create one. Trusts must be in writing, and if the grantor in such a deed did not intend to

create a trust a court of equity cannot convert it into a trust estate.

*Held*, by GRAVES, J., dissenting, that, in order to preserve the legal estate from destruction, a court of equity can appoint a trustee, order him to sell and convey said lands, and preserve the proceeds for the benefit of such life tenants and the remaindermen.

6. ———: ———: ———: Specific Performance: Merchantable Title: Former Decision Part of Contract. Where land had been conveyed to the grantor's daughter and the heirs of her body, and the plaintiff had entered into a written contract with her and her husband to purchase the tract at an agreed price upon condition that they would procure for him a merchantable title within a designated time, they did not procure such a title by bringing a suit against her children, as the living heirs of her body and also as a class representing such bodily heirs as might subsequently be born, and procuring a judgment appointing a trustee to sell the land and ordering him to convey it to plaintiff for the stipulated price and make a note for the amount, secured by a deed of trust, and pay the interest to the life tenant, and at her death to distribute the fund among her then bodily heirs. Such judgment was void, and the trustee's deed, instead of conveying a merchantable title, conveyed nothing; and such a judgment had previously been held, in the like case of Heady v. Crouse, 203 Mo. 100, to be void, and beyond the power of a court of equity to render, and said decision was as much a part and parcel of the contract between the plaintiff and said daughter and her husband as if it had been written into it.

*Held*, by GRAVES, J., dissenting, that by obtaining said judgment, from which no appeal was taken, the sellers did procure a merchantable title, said judgment was not void or voidable, and the buyer is not entitled to have his contract cancelled.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

REVERSED.

*Montgomery & Rucker* for appellant.

(1) The decree in the case of Botts v. Deal, was void because the court did not have jurisdiction of the

subject-matter, and did not have a right to render the particular judgment in the particular case. (a) A court of equity has no power to create an express trust. Trusts must be created by writing signed by the party granting the same, or by his last will in writing. Sec. 2263, R. S. 1919; Knapp v. Publishers Co., 127 Mo. 77; Hunter v. Briggs, 254 Mo. 62. (b) A court of equity has no jurisdiction of the cause unless some ground of equitable jurisdiction is found in the allegations of the petition. In order to give jurisdiction to a court of equity either the primary right, estate or interest to be maintained, or the violation of which furnishes the cause of action, must be equitable, or the remedy granted must be in its nature purely equitable. Pomeroy's Equity Jur. (4 Ed.) sec. 130. (c) One of the requisites to jurisdiction is the power to grant the relief in the case presented, or to render the particular judgment in the particular case. Gray v. Clements, 227 S. W. 113. (2) A decree which is not within the scope of the allegations and prayer of the petition is void. State ex rel. v. Muench, 217 Mo. 133; Charles v. White, 214 Mo. 208; Ecton v. Tomlinson, 278 Mo. 288; Hope v. Blair, 105 Mo. 93. (3) If a court of equity could ever be justified in ordering a sale of the interest of the contingent remaindermen contrary to the evident intention of the grantor, it would only be justified by some exigency which would make the action of the court indispensable to the preservation of the interests of the life tenant and remaindermen from total destruction. Such a decree could not be upheld where entered for the purpose of merely bettering the financial condition of such tenants, or for the purpose of enabling them to make a mere business speculation. Heady v. Crouse, 203 Mo. 110. (4) The judgment in the case of Botts v. Deal, would not be binding upon any of the heirs of the body of Sarah F. Deal who were not parties to that action. Heady v. Crouse, 203 Mo. 119. (5) A merchantable title is one of which the buyer may be reasonably sure

that no flaw or claim will arise to make his title bad, or to disturb its marketable value. Kling v. Realty Co. 166 Mo. App. 190; Green v. Ditsch, 143 Mo. 12.

*R. H. Duggins* and *R. M. Reynolds* for respondents.

(1)  The attack made herein by appellant upon the judgment in the case of Botts v. Deal, is a collateral attack.  This is not an appeal from said judgment, nor a writ of error from an appellate court, bringing up said judgment for review, nor a direct proceeding brought for the purpose of modifying or setting the same aside.  The effort is merely to evade the judgment and is therefore collateral. Russell v. Grant, 122 Mo. 161; Lovitt v. Russell, 138 Mo. 474; Johnston v. Realty Co., 167 Mo. 325. (2)  The only question, therefore, left in the case, is whether the circuit court had jurisdiction of the parties and of the subject-matter dealt with in said decree and brought forward and disclosed in the petition. Gray v. Bowles, 74 Mo. 419; Rosenheim v. Hartsook, 90 Mo. 357; Bank of Commerce v. Chambers, 96 Mo. 467; Holt County v. Cannon, 114 Mo. 514; Hamer v. Cook, 118 Mo. 476; Truesdale v. McCormick, 126 Mo. 39; Estes v. Neill, 140 Mo. 639; Winningham v. Trueblood, 149 Mo. 572; Reed v. Nicholson, 158 Mo. 624; Johnson v. Realty Co., 167 Mo. 325; Bedford v. Sykes, 168 Mo. 8; Kelley v. Gephart, 180 Mo. 588; Smith v. Black, 231 Mo. 681; State ex rel. v. Mills, 231 Mo. 493; Rivard v. Railroad Co., 257 Mo. 135. (3)  Jurisdiction over the subject-matter of an action means the power to determine legal controversies of the same class or sort. Postlewaite v. Gheslin, 97 Mo. 420; Leonard v. Sparks, 117 Mo. 103. Or, as it is sometimes said, it is the power to adjudge concerning the general question involved; the power to act and adjudicate in litigation of the same nature. State ex rel. Johnson v. Withrow, 108 Mo. 1; Truesdale v. McCormick, 126 Mo. 39; State ex rel. v. Mills, 231 Mo. 493. Or, as it has been

said, the power to grant or refuse relief in the case presented. Rivard v. Railroad, 257 Mo. 135; Gray v. Clements, 227 S. W. 113. (4) That the court may have wrongfully exercised its jurisdiction and made erroneous findings is immaterial. The merits of the matter are not open for inspection, and neither are the defects of the petition, if any. Holt County v. Cannon, 114 Mo. 514; Winningham v. Trueblood, 149 Mo. 572; Gray v. Bowles, 74 Mo. 419. (5) That the petition may have been inartificially drawn, or that it would have been insufficient upon demurrer, or that it failed to state a cause of action, does not affect or influence the matter; the one question and the one, alone, is, did the subject-matter belong to the class of cases of which the court had jurisdiction, and did the court exercise that jurisdiction? Gray v. Bowles, 74 Mo. 419; Holt County v. Cannon, 114 Mo. 514; Hamer v. Cook, 118 Mo. 476; Winningham v. Trueblood, 149 Mo. 572; Lingo v. Burford, 112 Mo. 149; Union Depot v. Frederick, 117 Mo. 138; Rosenheim v. Hartsook, 90 Mo. 357; Hagerman v. Sutton, 91 Mo. 519; Chrisman v. Divinia, 141 Mo. 122; Lewis v. Morrow, 89 Mo. 174; Kelley v. Gephart, 180 Mo. 588; Hamill v. Talbott, 72 Mo. App. 22; Yates v. Johnson, 87 Mo. 213. (6) Nor can it be impeached collaterally upon the ground that the wrong form of action was brought, if such be the case. Dollarhide v. Parks, 92 Mo. 178; 23 Cyc. 1093. Nor upon the ground of an alleged misjoinder or non-joinder of parties. Yates v. Johnson, 87 Mo. 213; Holt County v. Cannon, 114 Mo. 514. Nor, upon the grounds of insufficiency of or lack of evidence. 23 Cyc. 1095. Nor, even, upon the ground that the court mis-interpreted the law of the case, for if it did, it would not thereby have deprived itself of jurisdiction. Hamill v. Talbott, 72 Mo. App. 22; Kelley v. Gephart, 180 Mo. 588; Chrisman v. Divinia, 141 Mo. 122; Lewis v. Morrow, 89 Mo. 174; Rivard v. Railroad, 257 Mo. 135. (7) And it is true, also, that where a tribunal is clothed with jurisdiction of the class of

actions to which the subject-matter belongs, and the jurisdiction of the particular case depends upon contingent facts, the existence or non-existence of which the court must ascertain and determine, the finding of the court thereon is invulnerable and not subject to collateral attack. It may decide erroneously, and under a misapprehension of both the facts and the law, but such becomes immaterial, when the judgment is subjected to a collateral attack. Its judgment is binding except when appealed from, or brought up by writ of error for review in the regular way, or set aside in a direct proceeding for that purpose. Hadley v. Bernéro, 103 Mo. App. 554; Reed v. Nicholson, 158 Mo. 624; Bedford v. Sykes, 168 Mo. 8; State v. McChord, 207 Mo. 526-7; State ex rel. v. Mills, 231 Mo. 493; Rivard v. Railroad, 257 Mo. 135; Smith v. Black, 231 Mo. 681. (8) A court is possessed of jurisdiction when it is permitted by the policy of the law to hear and determine cases of the same nature as the one with respect to which the complaint is made, and where it has jurisdiction of the persons of the parties to the suit; and, however erroneous the exercise of such jurisdiction may be, if erroneous at all, its judgment cannot be attacked in a collateral proceeding. Rivard v. Railroad, 257 Mo. 168. (9) That a court of equity has unquestioned power to convert realty into personalty, and to authorize and order the sale of lands in which life tenants and remaindermen are interested, for the protection of the interests of the parties, is well settled in law; the decree making provision that the purchase price be held and the interests of all parties ultimately interested therein secured to them. 16 Cyc. 653-4, 638-9; 16 Cyc. 654, footnotes 13 and 14; Ridley v. Halliday, 106 Tenn. 607; Bofil v. Fisher, 3 Richardson's Equity, 1, 55 Am. Dec. 627 (South Car.); Ruggles v. Tyson, 104 Wis. 500; Hale v. Hale, 146 Ill. 227; Gavin v. Curtin, 171 Ill. 640. (10) When it appears as in the case of the judgment sought to be attacked herein, that the matters sought to be accomplished by the petition

of the plaintiffs therein, was an order for the sale of lands in which there were persons interested as life-tenants and others as contingent remaindermen, for the protection of the interests of each and to save them from loss and injury, and the appointment of a trustee to make such sale and hold the purchase money in place of the land for the benefit of the life tenant and the remaindermen, and that such matters were accomplished by the decree of the court, all that is necessary to uphold the judgment, so far as jurisdiction of the subject-matter is concerned, and to render it invulnerable from collateral attack, appears. Authorities cited under points 2 and 9. (11) Nor is the fact, that the interests of the remaindermen are contingent, and that it may be that some answering that description may come into existence, who were not in existence at the time of the rendition of such decree, and who were not served with process therein, and who might have an interest in the subject-matter, material. The court's decree in said cause bound all of the parties in interest in the subject-matter thereof, including those not then in being, but who might thereafter come in being and have an interest therein. The life tenants were parties to said cause, and such persons in being as were apparent or ostensible remaindermen, or who might answer the description of remaindermen upon the death of the life tenants, should they survive them, were before the court by process, and were sued, not only in their own right, but as representatives of all that class of persons who might thereafter come in being and be entitled to claim as remaindermen. That the parties in being representing a class, some of which may yet be unborn, may be sued in their own right and as representatives of the class, has long since been established. And whether they were sued as such or not is immaterial; if they were not sued specifically as such representatives, they would nevertheless be such representatives, and all would be bound by the decree; and such decree protecting the in-

terests in the purchase price to those ultimately entitled thereto. Reinders v. Koppleman, 68 Mo. 482; Sparks v. Clay, 185 Mo. 393; Acord v. Beatty, 244 Mo. 126; Wills v. Slade, 6 Ves. Ch. 498; Gaskell v. Gaskell, 6 Sim. Ch. 643; Mead v. Mitchell, 17 N. Y. 210; Ruggles v. Tyson, 104 Wis. 500; Finch v. Finch, 2 Ves. Sr. 492; Leonard v. Sussex, 2 Vern. 527; Sweet v. Parker, 22 N. J. Eq. 454; McArthur v. Scott, 113 U. S. 391; Ridley v. Halliday, 106 Tenn. 607; Hale v. Hale, 146 Ill. 227; Gavin v. Curtin, 171 Ill. 640; Bofil v. Fisher, 3 Richardson's Eq. 1, 55 Am. Dec. 627 (S. C.).

HIGBEE, J.—A rehearing was granted in this case and the cause was re-argued. We adopt the statement of the facts from the opinion of SMALL, C., in Division One of this court. It is as follows:

This is a suit to cancel plaintiff's note for $7000, and deed of trust upon forty acres of land securing same, and to recover $400 in money. The said forty acres is part of three hundred acres which plaintiff purchased from defendants, Julius H. Deal and Sarah F. Deal, his wife, on November 6, 1918. The forty acres was rejected by plaintiff because the said Deals' title thereto was defective, but, notwithstanding, the transaction was closed with the understanding, however, between the parties, in writing, that on account of the forty acres plaintiff should pay the defendant Julius H. Deal $400 in cash and deliver his promissory note for $7,000 for the balance of the purchase price, secured by a deed of trust thereon, upon condition that said defendants Deal should procure for plaintiff a merchantable title to said forty acres on or before the end of the next May term of the Circuit Court of Saline County; if said merchantable title was procured by said date the payment of the $400 and delivery of said $7000 note should be forever binding; but that in case said title could not be made merchantable by the end of said May term of the court, said $400 in cash and said note for

$7000 should be returned to plaintiff, and said forty acres relinquished by plaintiff to said Deal. The defect in the title to said forty acres was this: August 4, 1915, defendant Rebecca E. Botts, being owner in fee, conveyed same to defendant Sarah Florence Deal and "the heirs of her body," reserving a life estate in herself, said Rebecca E. Botts. At the time the sale was made said Sarah Florence Deal had four living children.

According to the agreement, the defendants Deal and Rebecca E. Botts brought suit in the Circuit Court of Saline County against the four children of Mrs. Deal, as the living heirs of her body, and also as a class representing such heirs of her body as may thereafter come into existence. The petition in effect recited the sale of said property to McConnell and asked that it be consummated through the appointment of a trustee to make the sale and hold the proceeds for the plaintiffs, Rebecca Botts and Sarah Florence Deal, and the heirs of her body in the same manner as they had title to and in lieu of the land itself. The petition in said suit was as follows, omitting caption:

"Now, at this day come the plaintiffs, and state to the court that on the 4th day of August, 1915, the plaintiff Rebecca E. Botts, was the owner in fee simple of the following described real estate situate in Saline County, Missouri, to-wit: The south half of Lot One of the southwest quarter of Section 30, Township 50, Range 22; that on said date, so being such owner, she made, executed and delivered her warranty deed of said date, by which she conveyed said land to the plaintiff, Sarah Florence Deal and the heirs of her body, reserving to herself, the said Rebecca E. Botts, however, the use and possession of said land during her natural life, and that by reason of the premises the said Sarah Florence Deal and the heirs of her body are now the owners of said land, subject to the life estate therein of the said Rebecca E. Botts; that the defendants Aubrey Deal, Oney Deal, Morris Deal and Raymond Deal are the sole

and only children of the said Sarah Florence Deal, now living or have ever been born to her, and are the ostensible persons who now, and will, upon the death of said Sarah Florence Deal, if they survive her, be the heirs of her body; that they are sued herein in their own rights, and as representatives of all that class of persons who may, upon the death of the said Sarah Florence Deal, be or become the heirs of her body.

"Plaintiffs state that the above described tract of land is located and adjoins a tract of about 260 acres of land formerly owned by plaintiff, Julius H. Deal, and has for many years been handled and used in connection with the land so formerly owned of the said Julius Deal, and is a part of the farm formed by the said land of the said Julius H. Deal.

"That said tract of land so used in connection with and as a part of the said Julius H. Deal farm, is productive of a good income and is valuable, and about the 6th day of November, 1918, the said Julius H. Deal entered into a contract for the sale of said farm, including the forty acres of land hereinbefore described, to one C. T. McConnell, and has sold and conveyed all of his said land for a valuable consideration, but that the purchaser thereof refused, and still refuses, to accept the conveyance of the forty acres herein described by reason of the condition of the title thereof. Plaintiffs state that the forty acres of land herein described will, unless the same be sold and conveyed to said purchaser become an isolated tract, not connected with any public road, and cannot be rented for a fair monthly value, on account of its inaccessibility, as the same will become wholly inclosed, surrounded and cut off by lands of other parties, and will be much depreciated in value, and no longer productive of income.

"The petitioners represent to the court that it is to the interest of all parties concerned that a trustee herein be appointed for the trust estate above, and that said forty acres of land be sold by said trustee, and held

and loaned by him, or by him be re-invested under the order of this court, and that the interest thereon, after the payment of the expenses of administering the trust, be paid to said Rebecca E. Botts as long as she may live, and upon her death that said proceeds go to the heirs of her body, the said Sarah Florence Deal.

"That said proceeds be held upon the exact terms as provided by the terms of said deed, for the holding of said land, and that the purchaser from the said trustee shall take and receive a fee simple title to said land free and discharged from said trust and for all other and further relief.

"Wherefore, plaintiffs pray the court that a decree be made herein ordering and directing that the above described real estate be sold at private sale to the best advantage, and that Julius H. Deal be appointed trustee by this court for the making of said sale and executing a deed to the purchaser conveying the fee simple title to the above described tract, to-wit: The south half of Lot One aforesaid, and that he receive the purchase money derived from said sale, and that he hold and loan the same upon the exact same trust, as provided by the terms of said deed, for the holding of said land, and loan thereof be secured upon real estate by first lien or deed of trust, of sufficient value to amply secure the repayment of the same, and that all notes and securities be taken and held in the name of said Julius H. Deal as trustee, and that after the payment of taxes and necessary expenses of administering the trust estate, the said Julius H. Deal shall annually pay to the said Rebecca Botts, so long as she may live, the interest on said purchase money for said tract of land, and from and after the death of said Rebecca Botts, shall pay the interest thereon to the said Sarah Florence so long as she, the said Sarah Florence Deal, may live, if she survive the said Rebecca Botts, and upon the death of the said Rebecca Botts, and the said Sarah Florence Deal, shall distribute and pay over to the heirs of the

body of the said Sarah Florence Deal the full sum of the purchase money received upon the sale of said lands.

"That said Julius H. Deal be required to report to this court, for its approval, any sale made by him, and further from time to time his proceedings hereunder; and must first give bond to be approved by the court in such sum as the court may deem sufficient in the premises, conditioned for the faithful performance of his duty as trustee herein, and plaintiffs further pray for any and all other relief to which they may be entitled."

The defendants were personally served, but made default. The findings and judgment followed the allegations and prayer of the petition. The court found that the defendants are the only children of Mrs. Deal, now living or who have been born, and will be the heirs of her body if they survive her, and are the representatives of all that class of persons who may, upon the death of Mrs. Deal, be or become the heirs of her body. The court also found that said forty-acre tract will become an isolated tract, etc., as averred in the petition; that such condition creates the necessity for the interposition of the equity side of this court, and that a trust herein is created. The court appointed Deal trustee, ordered that he sell said land at private sale to C. T. McConnell for the sum of $7400 and execute deed, etc. There was no evidence, so far as disclosed, or finding that $7400 was the reasonable value of the land.

I. The particular necessity relied on for the overturning of this solemn act of settlement is that the forty-acre tract will become isolated, etc. This situation could be remedied by the establishment of a private road, a private way of necessity, connecting the forty with a public highway, as authorized by Section 20 of Article II of our Constitution, and Section 10638, Revised Statutes 1919. Hence the conclusion of necessity is a *non sequitur*. The petition on its face demonstrates a situation fatal to the appeal for

Necessity: Isolation.

the intervention of equity. There was no necessity. The claim is devoid of substance or merit.

II. In Heady v. Crouse, 203 Mo. 100, the land had been devised to Mrs. Shelton and the heirs of her body. She afterwards married Heady, and in 1871 she and her husband brought an action against her six children, five of whom were minors, for the sale of the land for re-investment. Judgment was rendered as prayed, and the land sold. The judgment and sale were held void on collateral attack in an opinion by VALLIANT, J., concurred in by all the judges in Court in Banc. On page 110, we quote:

Contingent Remainder: Power of Court of Equity: Sale by Trustee.

"From this it appears there was no necessity suggested for the sale of the land, no apprehension of imminent destruction of title or loss of the property, not even a necessity for its sale for the support and maintenance of the children, but the decree rests solely on the foundation that it would conduce to the interest of the defendants to sell this land and invest the proceeds in other land—a mere business speculation. If the decree can be upheld it must be so on the ground that at that time the circuit court by virtue of its general equity jurisdiction had authority to appoint a commissioner and clothe him with power to enter into such a business speculation with the infants' real estate in the hope and for the sole purpose of bettering the infants' financial condition. There are some authorities in this country that hold that a court of equity may do that, but the weight of authority is to the contrary and we think reason and judicial prudence are against the recognition of such a power."

And on page 115:

"We find nothing in our decisions to sustain the position of defendants on this question.

"There is nothing in the character of this subject that especially distinguishes it as a creature of equity.

That which we technically call equity, in contrast with what we technically call law, was of natural origin and growth in our jurisprudence, springing up to meet the imperative demands of justice at places where the law was inadequate to the occasion. 'Equity follows the law,' it does not override or subvert the law; it comes to the aid of the law when the law, on account of its rigid cast, is unable to adjust itself to the demands of justice. Equity sits silent in the courts as long as the law is able to meet the demands of justice; it is silent to the call of a mere right, its voice is heard only when a cause, not contrary to law, well founded in right and justice, would suffer without its aid. It is cold to a mere legal demand, but warm to the prayer of helpless justice. It aids the law, but is not officious in its services; it does not take hold of a case merely because it has peculiar power.

"Now what was there in the nature of the case in which the Circuit Court of Lincoln County in 1871 undertook to exercise its power as a court of equity that especially appealed to equity for aid? What cry of suffering justice was heard by the chancellor? The case laid before the court by the plaintiffs in that case, stripped of superfluities, was simply this: We, the plaintiffs, think we can make money for these minors (as well as ourselves) by selling their contingent interest in this land and investing the proceeds in other lands, and we ask the aid of a court of equity to enable us to enter into that speculation. It is said in the able brief of the learned counsel for defendants that equity has always exercised jurisdiction over the estates of minors. That is so, and nothing we are now saying will deny to courts of equity their original jurisdiction in the case of minors and the protection of their property interest. But equity distinguishes between the shield and the sword; to protect the estate from a danger which the infant, because of his tender years, is unable to defend against, is one thing, to commission some one to go into

the field of trade selling and buying on account of the infant is another thing. Courts of equity have original jurisdiction over the estates of minors, but conceding that jurisdiction for certain equitable purposes does not concede jurisdiction to do any and every thing whatsoever with the estate of a minor, *quia* a minor—the act to be valid must be based on some equitable principle.''

And again on page 119:

''Under the Shelton will the land was devised to the widow for life with remainder to the 'heirs of her body' —not the 'issue of her body'—as in Tindall v. Tindall, 167 Mo. 218. The widow and her second husband as plaintiffs brought the suit against their children then living; of course she had no heirs at that time because she was living, her children had then only contingent interests depending on their outliving their mother; two of them never became her heirs because they died before she did, and their children who did become heirs of her body were not born until years after the decree was rendered. These latter were not bound by the decree even if the others had been because they derived their title, not by inheritance, from their mother in whom no title ever vested, but directly from the will as being heirs of the body of their grandmother.''

III. ''That there should be power to grant the relief specified in the judgment is as essential as that there should be power to entertain the action and dispose of the issues of law and fact therein.'' 1 Freeman on Judgments (4 Ed.) sec. 118 (p. 180) and 120c.

What Judgments May be Rendered.

In Gray v. Clement, 286 Mo. 100, l. c. 109, 227 S. W. 111, 113, Division Two of this court said:

''Where the record of a judgment shows on its face that the court did not have authority to grant the particular relief which it did grant, the judgment is void and subject to collateral attack. There must be jurisdiction of the matter acted upon; the court must have the

power 'to render the particular judgment in the particular case' before it can be said to have jurisdiction. [Charles v. White, 214 Mo. l. c. 208, 112 S. W. 545, 21 L. R. A. (N. S.) 481, 127 Am. St. 674; Kansas City v. Mullins, 200 Mo. App. 639, 209 S. W. 558; Norton v. Reed, 253 Mo. 236, l. c. 252, 161 S. W. 842.] The petition in the partition suit under consideration, and the judgment itself, recites that Josephine Brokel has a life estate in the premises, and the defendants have the remainder. It does not matter whether the remainder were vested or contingent. The judgment shows on its face that the relief granted was such as the court could not render in that class of cases. Therefore it is void and subject to collateral attack."

On a second appeal, decided at this term, this cnoclusion was reaffirmed. See Fithian v. Monks, 43 Mo. 502.

In Waldron v. Harvey, 54 W. Va. 608, 613, it was said:

" 'A decree is a conclusion of law from pleading and proofs, and where there is a failure of either pleading or proofs there can be no decree.' [Kenneweg v. Schilansky, 47 W. Va. 278; Vance Shoe Co. v. Haught, 41 Id. 275.] A decree, or any matter of a decree, which has no matter in the pleading to rest upon, is void, because pleadings are the very foundation of judgments and decrees. 'Matters not charged in a bill or in the answer, and not in issue in the cause, are not proper to be considered on the hearing.' [Hunter v. Hunter, 10 W. Va. 321.] There must not only be jurisdiction as to the person affected by the decree by having him before the court by process or appearance, but there must be jurisdiction of the matter acted upon by having it also before the court in the pleadings. Multitudinous cases attest this elementary axiom of jurisdiction. If either is wanting, the decree or judgment is void, not merely voidable or erroneous." [Citing cases.]

In Sache v. Wallace, 101 Minn. 169, 175, it is said: "It is laid down in 1 Black. Judg. 242, as a general

principle, that, in addition to jurisdiction of the parties and subject-matter of the action, it is necessary to the validity of a judgment that the court should have had jurisdiction of the precise question which the judgment assumes to decide, or the particular remedy or relief which it assumes to grant. Support for this doctrine is found in numerous well-considered cases.''

23 Cyc. 684 (4) adopts the foregoing statement of the rule.

In Gavin v. Curtin, 171 Ill. 640, relied on as authority by respondents, the court, at pages 646, 648, said:

'' '. . . The circumstances are such the life estate and the remainder in fee will be destroyed and lost to all who are or who may be interested therein unless jurisdiction to provide a remedy and power to avert such destruction are vested in some judicial tribunal. It is beyond discussion that courts of law are powerless to render relief. It remains to be determined whether a court of equity may assert and exercise the necessary jurisdiction and power. If not, it would seem we have an instance of the existence of a legal right which cannot be protected and maintained because of lack of an appropriate tribunal having adequate judicial power to render the necessary relief. We think our institutions are not subject to this reproach, but that our court in equity had full jurisdiction and power to meet the emergency.' . . .

''It is true, the exercise of that power can only be justified by some exigency which makes the action of the court, in a sense, indispensible to the preservation of the interests of the parties in the subject-matter of the trust, or, possibly, in case of some other necessity of the most urgent character.''

It is obvious from a reading of the petition in Botts v. Deal that no condition existed demanding or authorizing the interference of a court of equity, and that the petition shows on its face that the court had no jurisdiction in the premises to grant the relief prayed. A

private road connecting with a public highway would meet the exigency. Stripped of all pretenses, the case is as stated by VALLIANT, J., in the citations from Heady v. Crouse, supra: "We, the plaintiffs, think we can make money for these minors (as well as ourselves) by selling their contingent interest in this land and investing the proceeds in other lands and we ask the aid of a court of equity to enable us to enter into that speculation; . . . to protect the estate from a danger which the infant, because of his tender years is unable to defend against, is one thing; to commission some one to go into the field of trade, selling and buying on account of the infant, is another thing."

The authority of the Heady Case has never been questioned. To affirm the judgment in this case would be to overrule the Heady Case and to overturn a solemn settlement of an estate without any substantial reason therefor. If that may be done on the ground pleaded, then solemn property settlements are trifles light as air. The principle is analogous to that stated in Cohron v. Polk, 252 Mo. 261, 281: "In general, the cancellation of an executed contract is an exertion of the most extraordinary power of a court of equity, which ought not to be exercised except in a clear case, and never for an alleged fraud unless the fraud be made clearly to appear." [Bragg v. Packing Co., 205 Mo. App. 600, 604.]

In addition to what has been said, the court did a thing unheard of. Instead of ordering the land sold to the best advantage as prayed in the petition, the court ordered that it be conveyed to McConnell for $7400, without sale or without having heard evidence as to its value. There was no pretense of a sale. This clearly was not within the purview of the petition, nor within the power of the court. It is the taking of private property without due process of law. For the reasons stated, I think the petition stated no case of equitable cognizance and the judgment is a nullity.

IV. The only conflict between Jackson v. Miller, 288 Mo. 232, 232 S. W. 104, cited by respondents, which was an action to set aside a deed for mutual mistake, and Heady v. Crouse, supra, is in Paragraph II of the latter case, 203 Mo. l. c. 119. The defendants **Suit Against A Class.** in this case may or may not survive their mother. Queen Anne of England survived all of her seventeen children. In Mathews v. O'Donnell, 233 S. W. 451, 456, only one out of seven children survived the life tenant. In case the defendants in Botts v. Deal should predecease their mother, it seems a far-fetched doctrine that they represented those who would take the remainder. There would be no privity. The remainder-men would take as purchasers and not as heirs of the defendants, as stated by Judge VALLIANT. The rule announced in Jackson v. Miller may be a convenient rule of practice in a case of necessity, but manifestly there is no exigency in this case requiring resort to a fiction of that character. Moreover, it is obvious that the defendants in Botts v. Deal are in collusion with the plaintiffs. If they should predecease their mother and leave issue, or if other children should be born to Mrs. Deal, these should not be cut off from their rightful inheritance, but should be permitted to repudiate the unauthorized action of their alleged representatives, as in Heady v. Crouse. The law permits settlements of property by conveyances of the character in question. It ill becomes a court of justice to aid parties in subverting them by collusive actions. [Fountain v. Starbuck, 209 S. W. 900.]

V. On the face of the record in Botts v. Deal, there was no trust. It was an ordinary warranty deed. There were no averments of fraud, accident or mistake, nor of anything that by the utmost stretch of the imagina- **Converting Legal Into Trust Estate.** tion would authorize a court of equity to declare a trust. There was no intention to create a trust. A trust may be

created by writing. [Sec. 2263, R. S. 1919.] A court of
equity may declare, construe and administer trusts, but
it cannot create one. The grantor in the deed under
consideration might have declared a trust, but certainly
she did not. There is nothing in the facts of this case
to authorize a court to do so. *Ex nihilo nihil fit.* [Knapp
v. Publishers, 127 Mo. 53, 77; Hunter v. Briggs, 254 Mo.
l. c. 62.]

VI. At the time the judgment in Botts v. Deal was
rendered, and the deed was tendered to McConnell, Heady
v. Crouse was the law of Missouri. Tested by our ruling
in that case the deed tendered to McConnell
was a nullity; it conveyed no title. By the
terms of the contract he was entitled to a
merchantable title. Speaking of this character of title,
MACFARLANE, J., in Green v. Ditsch, 143 Mo. l. c. 12,
quoted from Waterman on Spec. Perf., sec. 412:

*Merchantable Title.*

"He should have a title which would enable him,
not only to hold his land, but to hold it in peace, and
if he wishes to sell it, to be reasonably sure that no
flaw or doubt will come up to disturb its marketable
value." [See also Kling v. Realty Co., 166 Mo. App.
190, 195.]

The law, as declared in Heady v. Crouse, was as
much part and parcel of the contract between McCon-
nell and Deal as if it had been written into it. Tested
by that rule the title offered to McConnell was not a
merchantable title.

It follows that the judgment must be reversed and
the cause remanded with directions to enter judgment
for the plaintiff as prayed in his petition. *Woodson,
C. J., Walker* and *David E. Blair, JJ.,* concur; *James
T. Blair* concurs in paragraph 6 and in result; *Elder, J.,*
dissents; *Graves, J.,* dissents and files opinion of SMALL,
C., as his opinion.

GRAVES, J.(dissenting).—I dissent from the opinion of the majority in this case and for my dissent file herewith the opinion of SMALL, C., in Division No. 1.

SMALL, C.—Suit to cancel plaintiff's note for $7000 and deed of trust upon forty acres of land securing same and to recover $400 in money. The said forty acres is part of 300 acres which plaintiff purchased from defendants Julius H. Deal and Sarah F. Deal, his wife, on November 6, 1918. The forty acres was rejected by plaintiff because the said Deals' title thereto was defective, but, notwithstanding, the transaction was closed, with the understanding, however, between the parties, in writing, that on account of the forty acres plaintiff should pay the defendant Julius H. Deal $400 in cash and deliver his promissory note for $7000 for the balance of the purchase price, secured by a deed of trust thereon, upon condition that said defendants Deal should procure for plaintiff a merchantable title to said forty acres on or before the end of the next May term of the Circuit court of said Saline County; if said merchantable title was procured by said date, the payment of the $400 and delivery of said $7000-note should be forever binding; but that in case said title could not be made merchantable by the end of said May term of the court, said $400 in cash and said note for $7000 should be returned to plaintiff, and said forty acres relinquished by plaintiff to said Deal. The defect in the title to said forty acres was this: August 4, 1915, defendant Rebecca E. Botts, being owner in fee, conveyed same to defendant Sarah Florence Deal and "the heirs of her body," reserving a life estate in herself, said Rebecca E. Botts. At the time the sale was made said Sarah Florence Deal had four living children.

According to the agreement, the defendants Deal and Rebecca E. Botts brought suit in the Circuit Court of Saline County against the four children of Mrs. Deal, as the living heirs of her body, and also as a class rep-

resenting such heirs of her body as may thereafter come into existence. The petition in effect recited the sale of said property to McConnell and asked that it be consummated through the appointment of a trustee to make the sale and hold the proceeds for the plaintiffs, Rebecca Botts and Sarah Florence Deal, and the heirs of her body in the same manner as they had title to and in lieu of the land itself. The petition is said suit was as follows:

"In the Circuit Court of Saline County, Missouri,
May Term, 1919.
"REBECCA E. BOTTS, SARAH FLORENCE DEAL and JULIUS
H. DEAL, Her Husband ................ Plaintiffs
"v.
"AUBREY DEAL, ONEY DEAL, MORRIS DEAL and RAYMOND
DEAL ............................. Defendants.

"PETITION.

"Now, at this day come the plaintiffs, and state to the court that on the 4th day of August, 1915, the plaintiffs, Rebecca E. Botts, was the owner in fee simple of the following described real estate situate in Saline County, Missouri, to-wit: The south half of Lot One of the southwest quarter of Section 30, Township 50, Range 22; that on said date, so being such owner, she made, executed and delivered her warranty deed of said date, by which she conveyed said land to the plaintiff, Sarah Florence Deal, and the heirs of her body, reserving to herself, the said Rebecca E. Botts, however, the use and possession of said land during her natural life, and that by reason of the premises the said Sarah Florence Deal and the heirs of her body are now the owners of said land, subject to the life estate therein of the said Rebecca E. Botts; that the defendants Aubrey Deal, Oney Deal, Morris Deal and Raymond Deal are the sole and only children of the said Sarah Florence Deal, now living or having ever been born to her, and are the ostensible persons who now, and will, upon the death of

said Sarah Florence Deal, if they survive her, be the heirs of her body; that they are sued herein in their own rights, and as representatives of all that class of persons, who may, upon the death of the said Sarah Florence Deal, be or become the heirs of her body.

"Plaintiffs state that the above described tract of land is located and adjoins a tract of about 260 acres of land formerly owned by plaintiff, Julius H. Deal, and has for many years been handled and used in connection with the land so formerly owned by the said Julius Deal, and is a part of the farm formed by the said land of the said Julius H. Deal.

"That said tract of land so used in connection with and as a part of the said Julius H. Deal farm is productive of a good income and is valuable, and about the 6th day of November, 1918, the said Julius H. Deal entered into a contract for the sale of said farm, including the forty acres of land hereinbefore described, to one C. T. McConnell, and has sold and conveyed all of his said land for a valuable consideration, but that the purchaser thereof refused, and still refuses, to accept the conveyance of the forty acres herein described by reason of the condition of the title thereof. Plaintiffs state that the forty acres of land herein described will, unless the same be sold and conveyed to said purchaser, become an isolated tract, not connected with any public road, and cannot be rented for a fair monthly value, on account of its inaccessibility, as the same will become wholly enclosed, surrounded and cut off by lands of other parties, and will be much depreciated in value, and no longer productive of income.

"The petitioners represent to the court that it is to the interest of all parties concerned that a trustee herein be appointed for the trust estate above, and that said forty acres of land be sold by said trustee, and held and loaned by him, or by him be re-invested under the order of this court, and that the interest thereon, after the payment of the expenses of administering the trust, be

paid to said Rebecca E. Botts as long as she may live, and upon her death, that said proceeds go to the heirs of her body, the said Sarah Florence Deal.

"That said proceeds be held upon the exact terms as provided by the terms of said deed, for the holding of said land, and that the purchaser from the said trustee shall take and receive a fee simple title to said land free and discharged from said trust and for all other and further relief.

"Wherefore, plaintiffs pray the court that a decree be made herein ordering and directing that the above described real estate be sold at private sale to the best advantage, and that Julius H. Deal be appointed trustee by this court for the making of said sale and executing a deed to the purchaser conveying the fee simple title to the above described tract, to-wit: The south half of Lot One aforesaid, and that he receive the purchase money derived from said sale, and that he hold and loan the same upon the exact same trust, as provided by the terms of said deed, for the holding of said land, and any loan thereof be secured upon real estate by first lien or deed of trust, of sufficient value to amply secure the re-payment of the same, and that all notes and securities be taken and held in the name of said Julius H. Deal as trustee and that after the payment of taxes and necessary expenses of administering the trust estate, the said Julius H. Deal shall annually pay to the said Rebecca Botts, so long as she may live, the interest on said purchase money for said tract of land, and from and after the death of said Rebecca Botts, shall pay the interest thereon to the said Sarah Florence, so long as she, the said Sarah Florence Deal, may live, if she survive the said Rebecca Botts, and upon the death of the said Rebecca Botts, and the said Sarah Florence Deal, shall distribute and pay over to the heirs of the body of the said Sarah Florence Deal the full sum of the purchase money received upon the sale of said lands.

"That said Julius H. Deal be required to report to

this court, for its approval, any sale made by him, and further from time to time his proceedings hereunder; and must first give bond to be approved by the court in such sum as the court may deem sufficient in the premises, conditioned for the faithful performance of his duty as trustee herein, and plaintiffs further pray for any and all other relief to which they may be entitled.''

The defendants in said cause were duly served with personal service by summons, each also being served with a copy of the petition by the Sheriff of Saline County. They, however, failed to appear or answer and judgment was rendered by default against them and the heirs of the body of said Sarah Florence Deal. Said judgment was in words and figures as follows:

"In the Circuit Court of Saline County, Missouri.

May Term, 1919.

"REBECCA E. BOTTS, SARAH FLORENCE DEAL, and JULIUS H. DEAL, her Husband ................ Plaintiffs.
"v.
"AUBREY DEAL, ONEY DEAL, MOTTIS DEAL and RAYMOND DEAL ............................. Defendants.

"Now, at this day, come the plaintiffs, in their own proper person, as well as by their attorneys of record, but the defendants, although having been duly notified by the service of writ of summons and copy of the petition in this cause, upon each of them, more than thirty days before the first day of the present term of this court, come not, but make default, and interlocutory judgment by default is rendered against them, and this cause coming on for trial, the same is taken up, and submitted to the court, and after hearing the pleadings and the evidence, the court finds therefrom, that on the 4th day of August, 1915, the plaintiff, Rebecca E. Botts, was the owner in fee simple of the following described real estate, situate in Saline County, Missouri to-wit: The South half of Lot One, of the southwest quarter of Section Thirty, Township Fifty, Range Twenty-two; said lot or tract of land being also described according to

Government subdivision as the southeast quarter of the southwest quarter of said Section Thirty.

"The court further finds from the evidence that on said date the plaintiff, Rebecca E. Botts, being such owner of said real estate, executed and delivered her certain warranty deed, of said date, to the plaintiff Sarah Florence Deal, by and in which she conveyed said real estate to the said plaintiff Sarah Florence Deal and the heirs of her body, reserving, however, therein, to herself, the said Rebecca E. Botts, the use and possession of said land during her natural life, and the court finds that by reason of the premises the said Sarah Florence Deal and the heirs of her body are now the owner of said real estate, subject to the life estate of the said Rebecca E. Botts.

"The court further finds from the evidence that the defendants, Aubrey Deal, Oney Deal, Morris Deal and Raymond Deal, are the sole and only children of the said Sarah Florence Deal, now living, or who have been born to her, and are the ostensible persons who now, or will, upon the death of said Sarah Florence Deal, if they survive her, be the heirs of her body, and that said defendants are the representatives of all that class of persons who may, upon the death of said Sarah Florence Deal, be or become the heirs of her body and are the only necessary persons to be made parties defendant to this suit.

"The court further finds from the evidence that the said above described tract of land is located and adjoins a tract of about 260 acres of land formerly owned by the plaintiff, Julius H. Deal, who is the husband of his co-plaintiff, Sarah Florence Deal, and also the father of defendants, and that said tract of land of forty acres has for many years been used, handled and cultivated in connection with the tract of 260, formerly owned by the plaintiff, Julius H. Deal, and is a part of the farm formed by the land of said Julius H. Deal.

"The court further finds from the evidence that the

said tract of forty acres, first above described, when so used as a part of said Julius H. Deal farm, is productive of good income and is valuable.

"The court further finds from the evidence that about the 6th day of November, 1918, the said Julius H. Deal entered into a contract in writing for the sale of his said farm, including said forty acres first above described, to one C. T. McConnell, and has sold and conveyed all said land for a valuable consideration, to-wit $———, but that the purchaser thereof refused, and still refuses to accept the conveyance of the said forty acre tract described by reason of the condition of the title thereof.

"The court further finds from the evidence that said forty acres of land first described herein will, unless the same is sold to said purchaser, become an isolated tract, not connected with any public road, and could not be rented for a fair rental value on account of its inaccessibility as the same will become wholly enclosed, surrounded and cut off by the lands of other parties, and will be greatly depreciated in value, and no longer productive of a reasonable income.

"The court further finds from the evidence that the facts, conditions, interests of the parties, the value of the land taken into connection with the 260 acre farm, and its depreciated condition when isolated, and without road facilities, creates the necessity for the interposition of the equity side of this court, and that a trust herein is created.

"The court further finds from the evidence that it is to the interest of all parties concerned that a trustee be appointed for the trust estate above, and the trustee shall sell said forty acre tract of land, above described, for the said sum of $7400, and that the proceeds thereof be paid into the hands of said trustee, and same be held by him as such trustee, and loaned out or by him reinvested under the order of this court, and that the interest or income thereof, after paying the expenses of

administering this trust, be paid to the plaintiff, Rebecca E. Botts, as long as she may live, and upon her death that said proceeds go and be paid to or turned over to the heirs of the body of said Sarah Florence Deal, absolutely.

"The court further finds from the evidence, that the plaintiff, Julius H. Deal, is a suitable and competent person to act as trustee herein.

"It is therefore ordered, adjudged and decreed that the plaintiff, Julius H. Deal, be and he is hereby appointed trustee, herein, for the purpose herein set out, and that he first qualify. as such trustee by giving and entering into a good and sufficient bond to the State of Missouri, in the penal sum of ten thousand dollars for the faithful performance of his duties as such trustee, said bond to be approved by the clerk of this court, and that said trustee sell said real estate, at private sale, to C. T. McConnell for the sum of $7400, and upon the payment to said trustee of said sum that he execute and acknowledge and deliver to C. T. McConnell a deed conveying the fee simple title to said land, and that said trustee receive the purchase money derived from said sale, and hold the same, in trust, upon the exact same terms, conditions and stipulations as provided in the deed executed by the plaintiff, Rebecca E. Botts, to the plaintiff, Sarah Florence Deal, and that said money be loaned out, and secured upon good real estate by first lien or deed of trust, of sufficient value to secure the repayment of the same, and that notes and securities be taken and held in the name of said trustee, and after paying the taxes and necessary expenses of administering the trust estate, the said trustee shall annually pay to said Rebecca Botts, as long as she may live, the net interest on said purchase money for said tract of land, and that from after the death of said Rebecca Botts, the said trustee shall pay the interest thereon, annually, to said Sarah Florence Deal, as long as she may live, if she survive the said Rebecca Botts, and upon the

death of both the said Rebecca Botts and Sarah Florence Deal, the said trustee shall distribute and pay over to the heirs of the body of said Sarah Florence Deal the full sum of the purchase money received from the sale of the said land.

"It is further ordered that said trustee shall pay the cost of this proceeding, and be allowed credit for the same out of the interest and income of said trust fund."

In pursuance of this judgment Julius H. Deal duly qualified as trustee, giving bond as required thereby, and then executed a trustee's deed, dated and duly acknowledged June 9, 1919, purporting to convey a fee simple title to said land, with full covenants of title and warranty, as such trustee, to the plaintiff C. T. McConnell, as directed by said decree, in consideration of $7400, the receipt of which was acknowledged. It was admitted by the plaintiff that said trustee's deed was tendered to him, but was refused, under advice of counsel that said deed and proceedings upon which it was based were ineffective to convey a merchantable title to the plaintiff.

This suit was then instituted by the plaintiff to recover the $400 in cash and cancel the $7000 note given by him to defendant Julius H. Deal, on the ground that the said trustee's deed and proceedings were wholly ineffectual to and would not vest in him a merchantable title to said forty acres of land, and he was, therefore, under said agreement entitled to a return of said money and note. The foregoing facts in substance appear in the testimony in this case. After hearing and considering the evidence, the lower court found the issues for the defendants and rendered judgment in their favor. Plaintiff, failing to secure a new trial, duly lodged his appeal to this court.

I. It is asserted by learned counsel for appellant that the decree in the case of Botts v. Deal is void, and

subject to collateral attack, because the decree was not fairly within the scope of the allega-

**Decree Within Scope of Pleadings.** tions and the prayer of the petition, in that it required a sale to McConnell and not a private sale to the best advantage. But we think this position is not well taken. This being a collateral attack upon the decree, the petition must be liberally construed to the end that its validity may be upheld. A reading of the petition will show that it alleges that on the 6th of November, 1918, Julius H. Deal entered into a contract with C. T. McConnell to sell said forty acres in connection with 260 acres to said McConnell, with which said forty acres had for years been used as a farm, but McConnell refused to accept the conveyance of the forty acres by reason of the condition of the title, and further, "that the forty acres of land herein described will, unless the same be sold and conveyed *to said purchaser,* become an isolated tract, not connected with any public road and cannot be rented for a fair monthly value on account of its inaccessibility, as the same will become wholly enclosed and cut off by lands of other parties and will be much depreciated in value and no longer productive of a reasonable income." The further allegation then follows, that it is "to the interest of all parties concerned that a trustee be appointed for the trust estate above; that said forty acres of land be sold by said trustee and (the proceeds) held and loaned by him or by him be re-invested under the order of this court. . . . That said proceeds be held upon the exact terms as provided by the terms of said deed for the holding of said land." The prayer is: "Wherefore plaintiffs pray the court that a decree be made herein ordering and directing that the above described real estate be sold at private sale to the best advantage, and that Julius H. Deal be appointed trustee by this court for the making of such sale" etc. . . . "That said Julius H. Deal be required to report to this court for its approval any sale made by him, and further,

from time to time his proceedings hereunder . . . and plaintiffs pray for any and all other relief to which they may be entitled.'' We think the petition sufficiently indicates that the best interests of all parties require ''the same be sold and conveyed *to said purchaser,*'' meaning McConnell. Under the petition the court could hear evidence, which it presumably did, that the sale to McConnell for $7400, which was the price McConnell agreed to pay Deal therefor in connection with his purchase of the 260 acres, was the best price that could be obtained therefor. While it is true the prayer was that Deal, as trustee, should report his sale to the court for approval, we see no reason why the court could not, in its decree, direct Deal, as trustee, to sell and convey to McConnell, it presumably having heard testimony as to the condition and value of the property and his offer therefor. It contained also a prayer for general relief. We think the decree was within the scope of the petition and rule this point against the appellant.

II.   But it is strenuously insisted that it appears upon the face of the petition and the decree in the case of Botts v. Deal that the court had no jurisdiction over the subject-matter or the parties who might be the heirs of the body of said Sarah Florence Deal at the time of her death. Consequently, the decree and trustee's deed in said cause would not afford a merchantable title to the plaintiff to said real estate. It is said that the proceeding in the case of Botts v. Deal et al. was not to sell the property to preserve it from destruction, but simply for re-investment, and that a court of equity has no jurisdiction or power to order the sale of the title of contingent remaindermen in real estate, simply for the purpose of changing the investment into cash or placing it in the hands of a trustee for them, to be reinvested in other property, as was done by the proceeding in question. It is true that this court

*Power of Court of Equity: To Save Estate from Destruction.*

ruled in Heady v. Crouse, 203 Mo. 100, that a court of equity had no jurisdiction to order the sale of an infant's real estate simply for re-investment. But we think that case is distinguishable from this. In that case, neither the petition nor the decree showed any special reason for the sale of the land. It was not asked to be sold to support the infants or because if not sold it would be lost or damaged; there was simply a general allegation that it would be to the interest of the defendants to sell it and "invest the proceeds in other land." The court comments upon this feature of the case on pages 109-110. In the case before us it appears from the petition and the decree that unless the land was sold to McConnell in connection with his purchase of the 260 acres from Julius H. Deal, with which it had for years been used and was most valuable, it would become isolated, and without any connection with a public road become greatly depreciated in value and no longer productive of a reasonable income. The court in its decree finds such facts to exist, and to create the "necessity" for the interposition of the equity side of the court. In the case of Heady v. Crouse, too, the decision was influenced, if not controlled, by the fact that at the time the decree under consideration was rendered there were special statutory provisions authorizing the circuit court to sell the lands of infants for the mere purpose of re-investment under certain safeguards provided in the statute, which statute was not followed, the case being brought in reliance upon the general equity powers of the court.

The court distinctly placed its decision in the case upon the ground that there appeared no danger of loss of the property to the infant remaindermen and no necessity for selling it to protect their interests.

The question before us came before the Supreme Court of Illinois in Gavin v. Curtin, 171 Ill. 640. In that case the plaintiff, Susan Curtin, was given a life estate in certain real estate in Chicago by the will of her father,

with remainder in fee "to the children of said Susan Curtin; and if any child of said Susan Curtin shall die in her lifetime, leaving issue, any of whom shall be living at the time of her death, such issue shall take equally amongst them the share which their respective parents would have taken, if living, at her death; and in case said Susan Curtin die leaving no children and no descendants of any deceased child" then the property. devised to her should vest in her brothers, naming them, the three sons of the testator. The property devised to Susan Curtin was encumbered with a mortgage of $22,000; was improved with an old building, but of little value. It also appeared that the income from the property was not sufficient to pay the taxes and interest on the mortgage; that said Susan, although married for thirty-seven years, had never borne a child; that her life estate encumbered as it was could not be sold, because it would only impose burdens on the buyer, and would be valueless, and that owing to the fact that the remainder in fee was contingent the fee must inevitably be lost to the remaindermen. A bill in chancery was filed by said Susan Curtin, making her three brothers, the ultimate contingent remaindermen, defendants, setting up the foregoing facts in substance, and praying that a trustee be appointed and vested with the title in fee to said real estate, to hold the title as provided in the will; and that said trustee be vested with power to sell said premises and invest the proceeds for those entitled, etc. The defendants were duly summoned, but did not appear and were defaulted. Evidence was heard by the master which sustained the allegations in the petition. The court entered a decree as prayed, appointing a trustee to hold and authorizing him to sell the property. One of the defendants brought the case to the Supreme Court by writ of error. The decree of the lower court was affirmed. BOGGS, J., delivered the opinion, and most thoroughly examined the foundation upon which the powers and jurisdiction of a court of equity, in such cases, rest. The learned judge said, 171 Ill. l. c. 645 et seq.:

McConnell v. Deal.

"The record discloses the defendant in error is possessed of a right, recognized by the general principles of municipal law, to enjoy during her lifetime an estate in the premises involved in the proceeding, and that her children, if any are born to her, will be legally entitled to receive and possess in fee the remainder in said property, and that the circumstances are such the life estate and the remainder in fee will be destroyed and lost to all who are or may be interested therein unless jurisdiction to provide a remedy and power to avert such destruction are vested in some judicial tribunal. It is beyond discussion that courts of law are powerless to render relief. It remains to be determined whether a court of equity may assert and exercise the necessary jurisdiction and power. If not, it would seem we have an instance of the existence of a legal right which cannot be protected and maintained because of a lack of an appropriate tribunal having adequate judicial power to render the necessary relief. We think our institutions are not subject to this reproach, but that our court in equity had full jurisdiction and power to meet the emergency. . . .

" 'The first of these maxims is, that equity will not suffer a right to be without a remedy. The principle expressed by this maxim is, indeed, the foundation of equitable jurisdiction, because, as we have seen, that jurisdiction had its rise in the inability of the common-law courts to meet the requirements of justice.' [Bispham's Principles of Eq. (3 Ed.) p. 53.]

"It is to be observed, the rights, to protect and preserve which these learned authors declare courts of equity will provide a remedy, are not mere abstract moral rights, but rights recognized by the existing municipal law. The right possessed by the defendant in error in this case is one which belongs to the purview of municipal law and comes within the scope of juridical action, but the power of the courts of law, or their modes of procedure, are inadequate to furnish a complete remedy. . . .

"We think it may be laid down as an unfailing rule

that equity will take jurisdiction in all cases where a right recognized by municipal law exists and courts of law do not provide an adequate remedy for the enforcement, maintenance and protection of that right, hence we think the court had jurisdiction to entertain the bill.

"It is true, the exercise of that power can only be justified by some exigency which makes the action of the court, in a sense, indispensable to the preservation of the interests of the parties in the subject-matter of the trust, or, possibly, in case of some other necessity of the most urgent character. . . .

" 'From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence that power is vested in the court of chancery.' . . .

"We think the evidence in the case at bar disclosed it was essential to the preservation of the rights and interests of all who are, or who, upon the contingency named in the will, may become, interested in the land, that the power so possessed should be exercised by the court."

The Illinois case was followed and cited as a leading authority by the Supreme Court of Tennessee in Ridley v. Halliday, 106 Tenn. 607, l. c. 611; by the Supreme Court of Wisconsin, in Ruggles v. Tyson, 104 Wis. l. c. 507 and 508; by the Supreme Court of North Carolina, in Springs v. Scott, 132 N. C. 548, l. c. 557. The Illinois case was decided in 1898.

The case of Bofil v. Fisher, 3 Richardson's Equity, 1, decided in 1850 and cited with approval in the Illinois and other cases, held that a court of equity had power to sell the estate of the life tenant and of all the remaindermen, vested and contingent, of unimproved and unprofitable real estate and invest and preserve the proceeds for the life tenant and the remaindermen in the same manner that they were interested in the real estate. The court, 3 Rich. Eq., supra, p. 6, said: "To say that

the court could not under circumstances like these convey away the fee, would be to assert a doctrine that would render conditional limitations and contingent remainders an intolerable evil to a growing and prosperous community. Thus to shackle estates without the power of relief, unless every person having a contingent and possible interest could be brought before the court, as a party complainant or defendant, according to the usual forms and ordinary practice of the court, would be to sacrifice the rights and interests of the present generation to those of posterity, and of citizens to aliens. If the whole property of the country were thus situated, it is obvious that all improvement and advance would be completely checked. And this check upon progress and improvement would be in direct proportion to the extent to which this state of things exists. The case before the court is an apt illustration. Here are valuable unimproved lots, in a thriving and prosperous town, which the life tenant cannot with a due regard to his interest improve, and the remaindermen cannot, because their rights are contingent and may never vest. Here also is a suffering family, who may obtain relief by the action of the court. And they are the first objects of the testator's bounty. Is there no power in the State, by which the titles of estates may be unfettered from the contingent claims of unborn remaindermen, and their rights not extinguished, but transferred from the property itself to a fund arising from the sale of the property? I think there should be; I think there is.''

To the same effect is Mayall v. Mayall, 63 Minn. l. c. 514-15. See also notes to Downey v. Seib, 8 L. R. A. (N. S.) l. c. 61, 62, 72 et seq.

III. But it is said that the entire property was threatened with loss to the remaindermen in all the above cases, and that the jurisdiction of the court was put upon the absolute necessity of selling and re-investing

the proceeds in order to preserve anything whatever of the property for the beneficiaries.
But it seems to us that the extent of the injury that would be done in case the property was not sold and the proceeds re-invested is simply an appeal to the discretion of the court as to whether or not it will exercise its jurisdiction. We think that under said authorities and on principle if it appears in cases where the title to real estate is limited, as was the title here in question to life estates and contingent remainders, that real loss will occur unless such property is sold and the proceeds preserved in lieu thereof, a court of equity has jurisdiction to sell the property and re-invest or preserve the proceeds for all the parties according to their interests to prevent such loss to them. We hold, therefore, that the Circuit Court of Saline County had jurisdiction of the class of cases to which the case of Botts v. Deal, belonged. It may be that the petition in that case did not show sufficient damage or destruction to the land involved to warrant the court in granting the relief sought, and the case might have been reversed on appeal, but it is well settled that if the court has jurisdiction of the class of cases to which the suit under consideration belongs, the fact that the petition failed to state a cause of action to warrant the relief sought or the judgment rendered does not render such judgment void or subject to collateral attack. In such case the action of the court might be erroneous, but not without jurisdiction, because a court having jurisdiction of the subject-matter and parties has as much power to decide wrong as right, and its judgment is not void because it decides wrong. [Sidwell v. Caster, 232 S. W. 1005; Cole v. Parker-Washington Co., 276 Mo. 220; Dollarhide v. Parks, 92 Mo. 188; Tube Works v. Ice Machine Co., 201 Mo. 58; Winningham v. Trueblood, 149 Mo. 1. c. 580-581; Rivard v. Railroad, 257 Mo. 168.]

In the latter case the question was whether a decree of the Circuit Court of Jackson County rendered in 1858

McConnell v. Deal.

against a married woman correcting a misdescription in a deed to real estate made by her, could be collaterally attacked, on the ground that the court had no jurisdiction and no power to correct a deed made by a married woman. It had been decided in Shroyer v. Nickell, 55 Mo. 267, and other cases, that where there was a mistake in the description of a married woman's deed "a court of equity possesses no coercive power, so far as concerns her, to compel specific performance, to reform the deed, or to do any other act or thing which will divest the title of the proper tract of land out of such married woman. Shroyer v. Nickell, 55 Mo. 264, and cases cited; 7 Cent. Law Jour., 182, and cases cited; Atkison v. Henry, ante, p. 151." [Meier v. Blume, 80 Mo. 184.] But in the Rivard Case, supra, the court held, at page 166, that in other states a court of equity had been held to have jurisdiction to correct a mistaken description in a married woman's deed, which the court ruled was the correct doctrine and was a sound principle of law. But the court said, at page 166:

"Plaintiffs cite Shroyer v. Nickell, 55 Mo. l. c. 267, and other cases following it, to show this court announced a legal doctrine not in harmony with the above rule. If this be conceded it only proves that this court did not give relief in certain cases in equity when it was granted by others. It does not sustain the contention that courts of equity were without jurisdiction to hear and decide the matter. This very divergence of view implies that courts of equity, here and elsewhere, did then exercise the power to pass upon and to decide questions of correctability of the valid contracts of married women, although in so doing they acted according to different equitable standards. None of these cases denied the power of circuit courts sitting in chancery to entertain jurisdiction of the subject-matter of such causes. All that is said in any of the former decisions of this court is, that it was error on the part of the trial courts to construe the statutes then existing to justify the correction in the matter

of description, of a married woman's deed, although made and acknowledged in full conformity with all legal requirements on her part.

"The crucial question in the case at bar, is not whether the decree correcting the married woman's deed followed the ruling in Shroyer v. Nickell, supra, but whether the trial court in refusing to apply that ruling acted without any jurisdiction of the subject-matter and the parties or erroneously exercised a lawful jurisdiction. The failure to distinguish between 'the erroneous exercise of jurisdiction' and 'the want of jurisdiction' is a fruitful source of confusion and errancy of decision. In the first case, the errors of the trial court can only be corrected by appeal or writ of error. In the last case its judgments are void and may be assailed by indirect as well as direct attack. A court is possessed of jurisdiction when it is permitted by the policy of the law to hear and determine cases of the same nature as the one with respect to which the complaint is made, and where it has jurisdiction of the persons of the parties to the suit. The judgment of the trial court lacking either of those essentials is open to any form of attack. It follows that the judgment of a court of general jurisdiction with the parties before it and with power to grant or refuse relief in the case presented, though contrary to law as expressed in the decisions of the Supreme Court or the terms of a statute, is at most only an erroneous exercise of jurisdiction and as such is impregnable to an assault in a collateral proceeding.

"In the matter in hand, the trial court had jurisdiction in the statutory mode of the grantees in the deed with full power to determine the cause of action stated in the petition filed. That its decree correcting the description of the land was opposed to the ruling of this court in Shroyer v. Nickell, supra, and the case following it, did not oust it from its rightful jurisdiction of the case presented, and its judgment, however erroneous, under the decisions of this court at that time, not having

been appealed from or brought up for review by writ of error, is conclusive on the parties thereto and all persons in privity with them.''

In the case at bar we rule that although the circuit court may have erred (which we do not decide) in rendering the judgment it did render in Botts v. Deal, it had jurisdiction over the subject-matter and therefore its judgment was not void and is not subject to collateral attack.

IV. But it is further argued that the defendants in the case of Botts v. Deal, although they were the only children of the life tenant and heirs of her body then living, might die before their mother, leaving children, who would, at her death, take under the deed made to her and the heirs of her body, and they not being parties or in existence at the time said suit was brought and decree rendered, would not be bound thereby.

**Suit Against Unborn Heirs.** In the case of Heady v. Crouse, supra, on page 119, this court so ruled, and held that such unborn possible heirs of the body would not be bound by the decree. But this is in conflict with a later, and we think a sounder, ruling of this court. [Jackson v. Miller, 288 Mo. 232, 232 S. W. 104, decided June 6, 1921.] That was a suit in equity to cancel a deed made to a married woman, giving her a life estate with remainder to the heirs of her body, on the ground that the deed was so made by mistake. Her four children being infants and all of the heirs of her body then living, were made defendants. It was alleged in the petition that said children were made parties as representing their own interests and also as representing the whole class of the heirs of the body of Mrs. Jackson, as in the case of Botts v. Deal. The circuit court granted the decree prayed for and set aside the deed and the guardian *ad litem* for the infants appealed the case to this court. We were asked to reverse the judgment because the plaintiff, Mrs. Jackson, might have other children who might survive her and

become the remaindermen, or her present children might die before her death, leaving issue, and such issue on the death of the plaintiff would become remaindermen and would take under the deed as purchasers and not as heirs of their parents, and the decree would therefore not be binding upon them. But we denied this contention of the appellant and held, on the authority of Reinders v. Koppelmann, 68 Mo. 482, that the unborn heirs of the body of Mrs. Jackson "were represented by her living children who took subject to their right" and that the decree was valid and binding upon them as well as the four living children of Mrs. Jackson who were made defendants. In the Illinois and Wisconsin cases, and in each of the other cases from other states, above cited, the courts also held that the decrees were binding upon the unborn heirs of the body of the life tenants in those cases, they being represented by the living heirs of the body or children of such life tenants who were made defendants in such proceedings.

In the case at bar we assume from the record, as seems to be assumed in the briefs, that Mrs. Deal had no grand-children living at the time the Botts-Deal suit was brought, and that all her children, then living, were defendants in that case. Under such circumstances the above authorities, with which we agree, show it to be firmly established as a principle of law and equity that in proceedings affecting contingent interests of the heirs of the body of the life tenant, if the living heirs of the body of such life tenant are made parties, as not only representing themselves, but also the unborn class of heirs to which they belong, they fully in all respects represent in such litigation the possible unborn issue of the life tenant, and such unborn issue are as firmly bound by the decree as if they were in existence and were parties to the suit. We must rule this point against appellant.

VI.    Another view is: In this case the four defendants, children of Sarah Florence Deal, were all, we as-

sume, of age (as no guardian *ad litem* was appointed for them), duly served with personal summons and a copy of the petition delivered to each. They made default and judgment was rendered as prayed in the petition for the appointment of Julius H. Deal as trustee and for the sale of the property by him to McConnell, he, as trustee, to hold and dispose of the proceeds in accordance with the right and title of the life tenants and the heirs of Mrs. Deal's body in the land. The proceeding was as much for the benefit of the remaindermen as for the life tenants. The said defendants stood by and consented to the sale of the property to McConnell under the decree— took no appeal therefrom, in effect joined the plaintiff in asking for the relief sought by the petition and granted by the decree. They would, therefore, be estopped by the record form questioning the authority of the trustee to bind them by the sale of the property, and they representing not only themselves, but all possible heirs of the body of Sarah Florence Deal who might be subsequently born, such unborn possible heirs of her body were also bound by the estoppel. Indeed, all persons, the grantor, Mrs. Botts, the first life tenant, who also had a reversionary interest on the failure of living issue of Mrs. Deal, at the time of her death, the second life tenant, Mrs. Deal, and her four living children, representing themselves and all her unborn descendents, were parties to the suit and in effect asking the court to make the order of sale, which was made. They are all bound and estopped by the proceedings and judgment.

*Estoppel.*

We hold, therefore, that plaintiff McConnell would receive, upon the acceptance of said trustee's deed and the payment of the purchase price, a complete, perfect and merchantable title to said forty acres of land. [Kent v. Church, 136 N. Y. 10.] We think the judgment below should be affirmed; but inasmuch as our decision herein is in conflict with Heady v. Crouse, supra, decided by Court in Banc, as above indicated, with reference to the

parties bound by the decree in Botts v. Deal, we transfer the case to Court in Banc. It is so ordered.